*521
 
 Stewart, J.
 

 The question presented is whether the trial court was justified in directing a verdict for defendant at the conclusion of plaintiff’s opening statement to the jury.
 

 There is no question that a trial court has authority to direct a verdict upon an opening statement of counsel, hut such action should be taken with extreme caution. Upon an appeal from a judgment entered on a verdict directed as in the instant case, it must be assumed that all the relevant statements as well as inferences favorable to plaintiff to be drawn from them are true, and that assuming their truth they do not furnish any basis for a verdict for the plaintiff.
 

 It is strenuously argued by plaintiff that in his opening statement it was shown that Haas was negligent in the manner in which he caused his golf ball to hit plaintiff without warning, and that Haas’s acts upon the golf course were the acts of defendant under the doctrine of
 
 respondeat superior.
 
 Both those facts must be found to have existed before defendant can be called upon to respond in damages for plaintiff’s injury.
 

 Defendant strenuously argues that, assuming plaintiff’s opening statement to be entirely true, no actionable negligence upon the part of Haas was shown, and that Haas was not acting as defendant’s agent or servant in the golf game he was playing, which resulted in plaintiff’s injury. It is claimed that, since he played golf, plaintiff assumed the risk of the injury he received, and there is persuasive authority to support that view.
 

 Plaintiff was playing the thirteenth hole whereas Haas was playing the fourteenth. Plaintiff was not in the direct line of Haas’s play and if Haas had driven his ball straight down bis own fairway no injury could have happened to plaintiff. However, Haas’s
 
 *522
 
 ball hooked to the left in plaintiff’s direction. As soon as that happened there was a cry of “fore,” and through pure accident (it is not claimed there was any intention to injure on the part of Haas) the ball struck plaintiff.
 

 By participating in athletic contests, including golf, a player assumes the ordinary risks of playing the game, and one of the ordinary risks in playing golf is being hit by a golf ball. It is well known that the most expert players sometimes accidentally either slice or hook their balls so that they, instead of going straight, go either to the right or to the left.
 

 In the case of
 
 Benjamin
 
 v.
 
 Nernberg,
 
 102 Pa. Sup., 471, 157 A., 10, the syllabus reads:
 

 “In an action of trespass to recover damages for personal injuries sustained while playing golf on a public links, the evidence disclosed that the plaintiff, who was playing in a foursome, was in the act of lining up his ball, preparatory to attempting to putt it into a cup, when he was struck in the mouth by a ball driven by the defendant. The defendant, who was playing in another foursome, had reached a tee and followed two of his companions in driving for the green. The entire fairway before him was clear and without giving warning he hit his ball. It did not go straight toward the green but went at a sharp angle to the left and struck plaintiff, who was on another green which was not in the defendant’s line of play. After the defendant had hit the ball one of his companions seeing that it had been ‘hooked-’ toward the plaintiff, shouted ‘fore’ but the warning was not sufficiently timely to save plaintiff.
 

 “Held:
 
 (1) That the plaintiff had assumed all the ordinary dangers incident to the game (2) that there was no duty on the defendant to warn the plaintiff of his intention to play and (3) a judgment entered
 
 *523
 
 for the defendant
 
 non obstante veredicto
 
 will be affirmed.
 

 ■ “There is in the game of golf the element of risk and a player assumes, as a matter of law, the risk of injury resulting from his own participation.”
 

 In the case of
 
 Andrew
 
 v. Stevenson, 13 Scots. Law Times, 581, 31 Scottish Law Review, 194 (30 N. O. C. A., 33, note), the judge said:
 

 “I do not for a moment, profess to lay down that whenever a player thinks he sees what seems to him a clear space in front of him he can proceed at once to play a full shot, or, for that matter, any shot, regardless of the risk of striking some other player.”
 

 However, in the case before him, the judge could not say that a full shot down an open course, when the nearest person in front was 84 yards off and well out of the direction, constituted fault. The strike might not have been correctly made, as was evidenced by the “slice” on the ball, but that could not create legal liability or of itself give a right to damages to a person struck, for persons engaged in playing a game take all the risks which may arise in its pursuit. See, also,
 
 Schlenger
 
 v.
 
 Weinberg,
 
 107 N. J. Law, 130, 150 A., 434;
 
 Katz
 
 v.
 
 Gow,
 
 321 Mass., 666, 75 N. E. (2d), 438;
 
 Walsh
 
 v.
 
 Machlin,
 
 128 Conn., 412, 23 A. (2d), 156138 A. L. R., 538.
 

 In the instant case the only statement as to the distance between plaintiff’ and Haas when he drove the ball which injured plaintiff is to the effect that the ball had a speed of from 110 to 120 miles per hour and traveled two seconds before reaching plaintiff. At ten miles per hour an object travels between 14 and 15 feet per second, so that at 110 miles per hour, Haas’s ball traveled more than 300 feet in two seconds.
 

 If we hold that under the circumstances narrated in plaintiff’s opening statement there was no action
 
 *524
 
 able negligence on tbe part of Haas, and that plaintiff’s injury was the result of a pure accident and from a risk which he voluntarily assumed when he played golf, it will be unnecessary to inquire into the question whether Haas was acting as defendant’s servant or agent in the course of and within the scope of his employment at the time he was playing golf as a result of which plaintiff received his injury. However, the record discloses that the trial court stopped one of plaintiff’s counsel when he sought to amplify his statement with reference to Haas’s alleged negligence, and, although it is difficult to imagine what additional statement could have been made to show negligence upon the part of Haas, in our opinion, the court should have allowed plaintiff’s counsel to amplify his statement in any way he saw fit.
 

 It is true that he made no proffer as to what his additional statement would contain but he was put somewhat off his guard by his right to assume that, when the court told him he had heard enough on the question of negligence, the court meant that a case of negligence had been stated so far as Haas was concerned. Therefore, we are impelled to decide this case, with reference to affirming the judgment of the Court of Appeals or remanding the cause to the trial court for a new trial, upon the question whether defendant was bound by Haas’s actions upon the golf course at the time when his misdirected golf ball struck plaintiff.
 

 Was Haas acting for and on behalf of defendant, within the scope of his employment and subject to the right of defendant to control his actions, when he was playing golf at 5:30 p. m. at the time his golf ball injured plaintiff?
 

 Summarizing the opening statement of counsel for plaintiff in the most favorable light to plaintiff, it appears that defendant was a manufacturer of machinery and equipment; that Haas was a general employee
 
 *525
 
 of defendant on a forty-hour, five-day week basis; that defendant hired an athletic supervisor to promote both industrial and intramural athletics for the benefit of its employees; and that it financed such athletics although the athletics itself was no part of the general purposes of the business of defendant.
 

 . In the spring of 1947, the Norwood Y. M. C. A. promoted an industrial golf league and asked defendant if it could participate in the league at five p. m., which presumably was after working hours. The athletic supervisor of defendant answered that defendant would participate, sent a check for $25 as an entrance fee, and appointed one of defendant’s employees as captain of a golf team. This captain asked Haas if he would care to play on the team and Haas voluntarily assented. The athletic supervisor gave Haas a shirt with the defendant’s name on it and paid the green fees of defendant’s golf team for each Monday evening, including the Monday on which plaintiff was injured. The defendant’s name was publicized on the billboard at the golf course as well as in the Cincinnati newspapers, and at the end of the year, defendant, through its supervisor of athletics, promoted a banquet at which the defendant awarded letters or sweaters and prizes to various members of its teams, industrial as well as intramural. After the injury to plaintiff Haas promptly reported it to defendant’s athletic supervisor.
 

 It will be observed that defendant is not in the business of athletics and that its business is of such a nature that publicizing athletic prowess on the part of its employees would not be an advertisement of its products. We are aware of the growing and commendable tendency on the part of industrial concerns to promote athletic activities among employees and there may be occasions growing out of such a practice where employers could be held responsible for negligence upon the part of employees engaged in athletic
 
 *526
 
 activities. However, in the instant case Haas was not working at his regular employment when he was playing golf.
 

 Defendant had not organized the golf league in which Haas was playing. It had been organized by the Y. M. C. A. and Haas agreed to play after working hours, with no demand or coercion upon the part of defendant. Presumably he received no compensation and was subject to no penalty if he did not play or if he desisted from playing at any time. It is true that defendant furnished him a shirt with its name upon it and paid his green fees, but it exercised no control over him while playing and the game of golf in which he was engaged was in a neighboring city, with no direction or control on the part of defendant as to any course of conduct of Haas while upon the golf course.
 

 In order to obligate a master to respond in damages for the negligence of a servant it is necessary not only that the servant be acting within the scope of his employment but the master must have the power of control and direction over the conduct of the servant.
 

 As to scope of employment, this court, in paragraph four of the syllabus of
 
 Tarlecka
 
 v.
 
 Morgan,
 
 125 Ohio St., 319, 181 N. E., 450, said:
 

 “The expression ‘scope of the employment’ cannot be accurately defined, because it is a question of fact to be determined according to the peculiar facts of each case.”
 

 In the opinion at page 323, Chief Justice Marshall said:
 

 “There is a clear distinction between acts done within the scope of the employment and acts done merely during the employment. ‘Scope of the employment’ has never been accurately defined, although many attempts have been made. It cannot be accurately defined, because it is a question of fact and each case is
 
 sui generis.
 
 The act of an agent is the act of the principal within the course of the employment when the
 
 *527
 
 act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service' to be rendered, or a natural, direct, and logical result' of it.”
 

 In our opinion, the act of Haas in playing golf after working hours, for which he received no compensation and which he could have ceased at any time without penalty, could not fairly and reasonably be deemed to have been an ordinary and natural incident or attribute of the service which he renders in his employment as a general employee of a company which manufactures machinery and equipment.
 

 Then, too, in order for the rule of
 
 respondeat superior
 
 to operate, the principal or master must have the power of control or direction over the conduct of the servant. The rule has never been better stated than as follows in paragraph four of the syllabus in the case of
 
 Clark
 
 v.
 
 Fry,
 
 8 Ohio St., 358, 72 Am. Dec., 590:
 

 “The rule of
 
 respondeat superior,
 
 as its terms import, only arises out of the relation of
 
 superior
 
 and
 
 subordinate,
 
 is applicable to that relation wherever it exists, as between principal and agent, or master and servant, is coextensive with it, and ceases when that relation ceases to exist; and the reason of it is to be traced to the power of control and direction, which the superior has a right to exercise, and which, for the safety of others, he is bound to exercise over the acts of his subordinates.”
 

 As a general employee of defendant, Haas, during all his working hours was under the direction and control of defendant. That does not mean that any officer or agent of defendant stood over him while he worked, but the things that he had to do were subject to the control and direction of defendant and if he failed to comply with such direction and control he could be penalized. All his acts subject to such direction and control would be the acts of defendant and defendant would be liable therefor. We cannot con
 
 *528
 
 ceive that, when Haas was on the golf course, even though defendant had paid his green fee and furnished Mm a shirt with defendant’s name on it, it could he said that defendant exercised or had the right to exercise any direction or control over Haas’s conduct or actions.
 

 Plaintiff relies upon the case of
 
 Ackerson, Admx.,
 
 v.
 
 Erwin M. Jennings Co.,
 
 107 Conn., 393, 140 A., 760, where it was held that it was a jury question whether a general manager of a company had the implied authority to invite the employees to a dinner and furnish them the use of a company car to go to the dinner, where one of the employees was injured by the negligence of a company employee in driving the injured employee home after the dinner. We are of the opinion that the facts in the Connecticut case are not comparable or analogous to those in the instant case.
 

 The New York cases cited by plaintiff concern the right to recover under the workmen’s compensation law. Workmen’s compensation recovery is based entirely upon statute and has to do with questions aside from those relating to the doctrine of
 
 respondeat superior, i. e.,
 
 workmen’s compensation cases involve injuries arising in and out of employment and having a causal connection therewith.
 

 Giving to plaintiff’s opening statement the most favorable construction to plaintiff, which we are bound to do, and if all the statements contained therein were proved by competent evidence, we cannot see that plaintiff has, under the doctrine of
 
 respondeat superior,
 
 a cause of action against defendant.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, 'Turner and Taet, JJ., concur.