## CHRISTIAN v. UNITED STATES.
### No. 11089.

United States Court of Appeals
Sixth Circuit.

Oct. 18, 1950.

William G. Craig, Henderson, Ky., L. C. Flournoy, Jr., Henderson, Ky., on the brief; King & Flournoy, Henderson, Ky., Faust Y. Simpson, Morganfield, Ky., of counsel, for appellant.

Norris W. Reigler, Louisville, Ky., David C. Walls and Norris W. Reigler, Louisville, Ky., on the brief, for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

PER CURIAM.

The administrator of Givens Christian brought an action under the Federal Tort Claims Act for damages for the death of his intestate resulting from the alleged negligent operation of an Army truck by a soldier in the United States armed forces. After hearing the evidence introduced by the plaintiff and by the defendant, the district court dismissed the action; and the administrator has appealed.

A survey of the testimony of the witnesses discloses the following facts. Private Lampkin was duly issued a trip ticket to transport for recreational purposes a group of soldiers from Camp Breckinridge, Kentucky, to Sturgis, Kentucky, and return. The party left the camp around six o'clock P.M., and were ordered to return to camp around eleven o'clock P.M. The objective point was the carnival grounds in Sturgis. On the way to Sturgis, Lampkin stopped at Morganfield, where he and some of the soldiers drank liquor.

When the truck arrived at Sturgis, the soldiers got off and most of them went into the carnival grounds. Private Lampkin parked the truck and then walked around the carnival, where he met West, a civilian, with whom he drove into the town of Sturgis and had more drinks. The truck was then driven back to the carnival by West and parked near the grounds.

According to the testimony of West, he and Lampkin walked just within the grounds, where Lampkin sat down on a rack and started talking to a girl who was in charge of one of the concessions. Within five or ten minutes, a deputy sheriff, Christian, walked up, looked at Lampkin, and followed him as he went outside. When Lampkin got into the truck, Christian told him he was too drunk to drive. An argument ensued, and Lampkin told the deputy sheriff that he had a trip ticket to drive the truck and that nobody else was going to drive it. Lampkin started to drive away, when Christian ran and grabbed him. Seeing this, West said that he asked Christian if he wanted him to drive the truck. He testified further that Christian had tried to get some other soldier to drive, but had not been able to do so. Lampkin then told West, who was sitting on the opposite side from the driver, to drive the vehicle. As they drove away, West was told by Christian to park in front of a restaurant, and to hold Lampkin until he went in and called a police officer. He cautioned West not to let Lampkin have the truck.

While Christian was getting the police officer, Lampkin tried to obtain control of the truck and finally put himself under the driver's wheel when West stepped off. Lampkin backed up the truck and then started forward with it. He ran into a curb. As the truck started forward again, Christian ran alongside and grabbed it; and, in hanging on, was in some manner killed.

The police officer, Shackleford, testified that the deputy sheriff had told him that he had a soldier who was too drunk to drive his truck. Shackleford, who had come out of the restaurant in response to Christian's summons, saw Christian get on the running-board, reach in, and grab the soldier by the wrist. He heard Christian tell the soldier that he could not drive, because he was too drunk. Nevertheless, Lampkin started off with the truck. The next time the witness saw Christian, he was lying at a street crossing in Sturgis.

Deweese, a witness who had joint control of the American Legion's part of the carnival, testified that his colleague, Mulloy, was trying to pacify an argument between the soldier, Lampkin, and the deputy sheriff, Christian, who was telling Lampkin that he was in no condition to drive the truck and would not be allowed to do so; but that some other soldier might drive it for him. The witness stated futher that he and the deputy sheriff tried to find some one to drive the vehicle, but were told by two soldiers whom they located that they would not drive it, nor help in the situation, and that they "did not want any

part of it." Deweese and Christian returned to the scene of the trouble at the front gate of the carnival, and were followed by the two soldiers. He testified that Lampkin was insisting to the deputy sheriff that he had a trip ticket and that no one else should drive the truck. The soldier offered to show Christian his trip ticket, but instead of getting the ticket, he started the motor of the truck; whereupon, Christian got on the running-board and further argument ensued, with the soldier trying to drive the truck away and the deputy sheriff trying to restrain him. Deweese stated that Christian told Lampkin he did not want to arrest him, but that he did not want him to drive in his drunken condition. Lampkin pulled upon Christian's tie and cursed him. The deputy sheriff then requested West to drive the truck. West went around to the driver's seat and Christian got on the running-board on the opposite side.

Lampkin remembered arguing over the trip ticket and stating that nobody except him was going to drive the truck, but remembered nothing after he got under the wheel and started off.

In ordering dismissal, the district judge stated: "I am further of the opinion, taking the case as a whole, that the evidence offered by the United States clearly establishes that he [Lampkin] was acting without the scope of his authority"; that his presence in Sturgis was not within the scope of his employment; that he was within the rightful custody of Deputy Sheriff Christian because of drunkenness; and that his attempting to escape caused the wrongful death of Christian: "all of which clearly shows that he was without the scope of his employment" at the time of the fatal incident. We think the district judge's reasoning was sound.

The pertinent portion of the Federal Tort Claims Act vests jurisdiction in the district courts of the United States to render judgment on claims against the United States for money only "on account of damage to or loss of property or on account of personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 931; Reenacted in substance in 28 U.S.C. §§ 1346(b) and 2674, 28 U.S.C.A. §§ 1346(b), 2674.

▮▮ We have been cited to no Kentucky authority which would seem to place liability upon a private employer of Lampkin in the circumstances of this case. It is true that a master would not be exonerated on the theory that his servant was not employed to get drunk and therefore departed from the scope of his employment in doing so. To the contrary, drunkenness on the part of an agent is an act of negligence for which his employer becomes liable, if the servant otherwise is acting within the scope of his employment. Central Truckaway System, Inc. v. Moore, 304 Ky. 533, 201 S.W.2d 725. An employer would not be absolved by a slight deviation of his employee from the employer's business. To exonerate the master from liability, it is essential that deviation or departure by the servant from his master's business was for purposes entirely personal to the servant. Fleischmann v. Howe, 213 Ky. 110, 280 S.W. 496.

▮ In the instant case, it is obvious that, for purposes entirely personal to himself, Private Lampkin deviated from the purposes for which the United States furnished him an Army truck in which to drive soldiers from Camp Breckinridge to the carnival grounds at Sturgis, Kentucky. In the course of his complete deviation, he negligently caused the death of appellant's intestate.

▮ It is plain to us that, in Kentucky, the master is liable for only such torts as the servant commits while in pursuance of his master's business. Brooks v. Gray-Von Allmen Sanitary Milk Company, 211 Ky. 462, 466, 277 S.W. 816; Challinor v. Axton, 246 Ky. 76, 83, 54 S.W.2d 600.

The judgment of the district court is affirmed.