Weygandt, C. J.
One of the grounds on which the Court of Appeals based its reversal was that the trial court should have sustained the defendant’s motion to direct a verdict in his favor at the close of all the evidence.
This is the sole question requiring the consideration of this court.
The answer to this question depends on the particular facts and circumstances of this case. Fortunately many of these are not in dispute.
The defendant owned and operated an automobile agency in the city of Miamisburg, Ohio. He owned the car which collided with that of the decedent. .The driver of the defendant’s vehicle was in the latter’s employ as a salesman. This employee, Fink, lived in Cincinnati although the defendant’s'place of business was in Miamisburg. Fink did not own a car. There was public transportation between the two cities, but he obtained permission from the defendant to use one of the latter’s cars to make the trip back and forth until he (Fink) could purchase a car of his own. His working hours were from 9:00 o ’clock in the morning until 5:30 in the evening. The collision occurred at or shortly before 8:30 in the morning while Fink was driving from his home to his place of employment. The decedent and Fink were driving in opposite directions. When the cars were approximately 60 yards apart, two dogs started across the highway. Fink struck one of them and apparently lost control of the car. In any event it veered into the path of the car driven by the decedent, and the collision resulted.
The Court of Appeals made a careful and comprehensive analysis of the matter. In part the statement reads as follows:
“We come now to consider the principal question in the case: Was the driver of defendant’s automobile *209 acting as agent for defendant and within the scope of his employment at the time and place of collision?
“The evidence when construed most favorably to plaintiff shows that the driver of defendant’s automobile was employed as a salesman by the defendant on a fixed salary to sell automobiles for the defendant at his place of business in the city of Miamisburg; that his working hours were from nine a. m. until five-thirty p. m.; that he resided in Cincinnati, Ohio; that the salesman did not own an automobile, but that it was his purpose to purchase a new automobile from defendant; that he planned later to move his residence to Miamisburg; that the defendant granted permission to the salesman to use a used automobile owned by the defendant to drive to his residence in the evening and return to his place of employment in the morning; that the salesman had a choice to use or not to use an automobile for such transportation and if an automobile were used he had a choice of which automobile to use; that the automobile used at the time of collision was equipped with dealer license plates of the defendant; that the salesman at times purchased gasoline for the automobile so used for which he was not reimbursed; that the salesman had other means of transportation to and from his place of employment by the use of a bus line; that no consideration passed or was agreed upon between the defendant and the salesman on account of the use of such used automobile for such purpose; that the duties of the salesman were to handle prospective purchasers at defendant’s place of business.and to sell automobiles; that the salesman was authorized to sell used automobiles owned by the defendant at a fixed price to any person at any time or place, regardless of the place of residence of the purchaser; that the sales actually made by the salesman were made at defendant’s place *210 of business; that the automobile driven by the salesman at the time of the collision was taken by the salesman with the consent of the defendant for the purpose of going to his residence in the evening and returning to his place of employment the next morning; that at the time of the collision the salesman was driving from his residence in Cincinnati to his place of employment in Miamisburg.
“It will be observed that the collision occurred at eight-thirty a. m. and that the salesman’s duties did not begin until nine a. m. at the defendant’s place of business.
“Was the salesman acting under the direction or control of defendant at the time of collision? Was the salesman acting in the discharge of his duties as salesman at the time? Was the salesman engaged at the time in the prosecution of the defendant’s business? The latest expression of our Supreme Court on this question is Rogers v. Allis-Chalmers Mfg. Co., 153 Ohio St., 513, 92 N. E. (2d), 677, in which the court, on page 526 said:
“ ‘In order to obligate a master to respond in damages for the negligence of a servant it is necessary not only that the servant be acting within the scope of his employment but the master must have the power of control. and direction over the conduct of the servant. ’
“In the instant case the facts do not meet the test. There is no evidence whatever that the defendant had ‘the power of control and direction’ over the salesman while the salesman was driving from his residence to his place of employment. The controlling rule is simply stated but the difficulty always lies in its application. In Lima Ry. Co. v. Little, 67 Ohio St., 91, 65 N. E., 861, it was held that the test of the master’s liability is ‘whether such act was done by the servant *211 while engaged in the service of, and while acting for the master, in the prosecution of the master’s business.’ * * *
£ £ * * #
“The only possible theory upon which this case could have been submitted to the jury would have been on the ground that a reasonable inference of agency arose from the fact that the evidence showed that the automobile being driven by Fink at the time of the collision was owned by the defendant and had been taken by Fink with permission of the defendant on the night before the collision occurred. * * * In the case at bar there is positive and overwhelming evidence in proof of the fact that the defendant granted permission to the salesman to take the used car on the night before the collision for the purpose of going to his residence in Cincinnati; that at the time of the collision he was driving this used car from his residence to his place of employment; that the accident occurred at 8:30 a. m. and that his duties at his place of employment did not begin until 9:00 a. m.; that at the time the defendant granted Fink permission to use the car the purpose of its use was the convenience of Fink and not the defendant; that at the time the collision occurred the car was being used not in furtherance of the master’s business, but for the personal convenience of Fink. This evidence is not contradicted. We recognize the rule that in the absence of evidence to the contrary a reasonable inference may arise with respect to the question of agency. However, where the evidence is positive and uncontradicted, as in this case, with respect to the matter of the permissive use of the defendant’s car by the driver for the purpose of the driver’s personal convenience and not in furtherance of the master’s business, no inference may be drawn that at the time of the collision the *212 driver was acting within the scope of his employment. # *
í i * # #
“An interrogatory was submitted to the jury which required it to state specifically what business of his employer the driver of the defendant’s automobile was engaged in at the time the accident occurred, which was answered: ‘Transportation in the course of selling used cars for his employer.’ The case of the appellee is not strengthened by this answer. In fact, the answer of the jury demonstrates a weakness in the case of the appellee as there is no evidence to support the answer or from which a reasonable inference may be drawn to that effect.
“In our opinion any inference as to agency was so completely refuted by the uncontradicted evidence on the subject that reasonable minds could not differ on this matter; reasonable minds could only conclude that the salesman at the time and place of collision was not acting within the'scope of his employment or in furtherance of his master’s business. The court should have sustained defendant’s motion for directed verdict and defendant’s motion for judgment non obstante veredicto.”
A careful study of the evidence in the case discloses the correctness of the foregoing view of the Court of Appeals.
Part of the burden of the plaintiff was to adduce evidence tending to show that a half hour before his work was to begin, Pink was acting within the scope of his employment and that the right to control his conduct was in the defendant. The plaintiff failed to produce such proof. The single fact of the defendant’s ownership of the automobile under these circumstances does not meet the test.
A clear statement of the fundamental rule here in *213 volved was made by this court in the fourth paragraph of the syllabus in the case of Clark v. Fry, 8 Ohio St., 358, 72 Am. Dec., 590, as follows:
“4. The rule of respondeat- superior, as its terms import, only arises out of the relation of superior and subordinate, is applicable to that relation wherever it exists, as between principal and agent, or master and servant, is coextensive with it, and ceases when that relation ceases to exist; and the reason of it is to be traced to the power of control and direction, which the superior has a right to exercise, and which, for the safety of others, he is bound to exercise over the acts of his subordinates.”
Likewise, in the second paragraph of the syllabus in the case of Lima Ry. Co. v. Little, 67 Ohio St., 91, 65 N. E., 861, this court said:
“2. The test of a master’s liability is not whether a given act was done during the existence of the servant’s employment, but whether such act was done by the servant while engaged in the service of, and while acting for the master, in the prosecution of the master’s business.”
The judgment of the Court of Appeals must be affirmed.

Judgment afirmed.

Zimmerman, Stewart, Middleton, Taft, Matthias and Hart, JJ., concur.