**JOZWIAK et al.**

v.

**UNITED STATES.**

Civ. No. 2851.

United States District Court,

S. D. Ohio, E. D.

June 28, 1954.

**66**

Waddell & Furbee, St. Clairsville, Ohio, D. Curtis Reed, Columbus, Ohio, for plaintiffs.

Hugh K. Martin, U. S. Atty., Loren G. Windom, Asst. U. S. Atty., Columbus, Ohio, for defendant.

CECIL, District Judge.

This action is brought by the complaint of five plaintiffs, namely, Joseph S. Jozwiak, Mary Ida Jozwiak, Dorothy M. Jozwiak, Joseph Smolira and Nellie H. Smolira against the United States of America as defendant.

The plaintiffs seek to recover damages from the defendant by reason of injuries which each of them suffered when an automobile in which they were riding was struck by an automobile driven by one Lawrence M. Sowers, an employee of the defendant.

The action is brought under subsection (b) of Section 1346 of Title 28 U. S.C.A. This section reads in part as follows:

"the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The case was tried and submitted to the Court upon the pleadings, the evidence and briefs of counsel.

At the conclusion of the plaintiffs' case counsel for defendant made a motion for judgment of dismissal. This motion was overruled.

At the conclusion of all of the evidence, the motion of the defendant was renewed. The Court then reserved ruling upon this motion.

The case is now before the Court upon the defendant's motion to dismiss. If that motion is overruled, the case being fully submitted, will then be decided upon the merits. The facts are as follows:

(1) In June of 1949, and for about ten years prior thereto, one Lawrence M. Sowers was employed in the Fish and Wildlife Service of the Department of Interior of the United States, and was stationed at Fort Worth, Texas.

(2) On June 9, 1949, Mr. Sowers received "Notification of Personnel Action" (plaintiffs' Exhibit 10). By this notification Mr. Sowers was advised of a promotion and transfer to Washington, D. C.

Under the heading of "Remarks" in this notification, the subject employee was given instructions, or advice, as follows:

"Allowance of travel expenses of self and transportation of immediate family and household goods, in accordance with regulations. Use of privately-owned conveyance is authorized, if desired. This transfer is in the interest of the Government and is not made primarily for your convenience or benefit, or at your request."

(3) Under date of June 23, 1949, Mr. Sowers received "Letter of Travel Instructions" which was offered in evidence and marked "plaintiffs' Exhibit 11". By this letter, Mr. Sowers was directed to proceed on or about July 5, 1949, from Fort Worth, Texas, to Washington, D. C., for the purpose of transferring his official station from Fort Worth to Washington. It was further

stated in this letter that at the conclusion of his trip about July 8, 1940 (9) he should report to Chief of the Branch of Game Fish and Hatcheries and that his official station was to be Washington, D. C., effective upon arrival. He was to be allowed $6.00 per diem in lieu of subsistence. The letter also contained the following special features:

"Transportation of the members of your immediate family and of your household goods and personal effects is authorized by Government expense in accordance with applicable regulations. The above travel may be performed by privately owned automobile if desired, with reimbursement at a rate not to exceed $.07 per mile. Since the advantage to the Government covering such use has not been determined in advance by the Director, a showing of such advantage must accompany the claim for reimbursement.

"You are authorized to incur in strict conformity with law, Standardized Government Travel Regulations, orders of the Secretary and decisions of the Comptroller General such actual and necessary expenses as may be essential to the duty herein directed."

(4) Mr. Sowers and his wife began making preparations to move on Tuesday, July 5, 1949. These arrangements were completed at about three o'clock in the afternoon of Saturday, July 9, 1949. At this time their household effects had been loaded on a moving van for transportation to Washington, D. C.

(5) On Monday morning, July 11, 1949, at 7:30 a. m., Mr. Sowers, his wife and three months old child left Fort Worth, Texas, in Mr. Sowers' own car en route to Washington, D. C.

(6) In the interim, between Saturday afternoon and Monday morning, Mr. Sowers and his family stayed with friends in Fort Worth and attended their own church on Sunday, July 10.

(7) The Sowers elected to travel by their own car in order that they would have it with them at their destination as a means of transportation.

(8) From Fort Worth, the Sowers went to Dallas, Texas, where they stopped for about an hour and a half to see a radio program.

(9) From Dallas, the Sowers traveled over Route 67 to Texarkana and from there to Arkadelphia, where they stopped for the night of Monday, July 11.

(10) The Sowers stopped in Arkadelphia for the reason that Mr. Sowers had an uncle who was President of a college at that place. They attempted to contact this uncle, but were unsuccessful.

(11) From Arkadelphia, the Sowers went to Memphis, Tennessee, where they spent the night of July 12 with Mrs. Sowers' brother.

(12) On Wednesday morning, July 13, the Sowers departed from Memphis to Nashville, Tennessee.

(13) At Nashville, Tennessee, the Sowers departed from what would have been the most direct route to Washington, D. C., and went to Louisville, Kentucky. In Louisville, Kentucky, Mr. Sowers stopped for gas and called an old army buddy, to whom he talked for thirty to forty minutes.

(14) From Louisville, the Sowers went through Cincinnati to Dayton, Ohio, where they arrived about midnight of Wednesday, July 13.

(15) Mr. Sowers had a brother living in Dayton, with whom he and his family stayed until Sunday morning, July 17. This stop in Dayton had been planned before the Sowers left Fort Worth, Texas.

(16) At the time of arrival in Dayton, Mr. Sowers' brother was in California on a business trip and did not return to Dayton until Friday night, July 15.

(17) The Sowers left Dayton at about 10:30 a. m., and proceeded East through Columbus.

(18) When the Sowers car arrived at a point 1.9 miles East of the corporate limits of St. Clairsville, Belmont County, Ohio, an accident occurred in which the car driven by Mr. Sowers swerved from the east-bound lane of traffic across U.S.

40, into the west-bound lane of traffic and collided with a car driven by Joe Jozwiak, one of the plaintiffs herein.

(19) Mr. Sowers and his three months old daughter were killed as a result of this collision. Mrs. Sowers was knocked unconscious and also injured, but recovered.

(20) Joe Jozwiak and the other four occupants of the car, all of whom are the plaintiffs herein, were injured in the collision.

(21) Corporal Miller, of the Ohio Highway Patrol, was following the car being driven by Mr. Sowers and was an eye-witness to the accident.

(22) Corporal Miller did not exactly see how the accident happened, but believed that the right front and rear wheels of Mr. Sowers' car had gone into a rut on the right side of the road and while in this rut, had come upon a concrete sewer basin cover, which threw the car sharply to the left and across the road to the plaintiffs' car.

(23) The accident occurred at 6:15 p. m., and the inference may be drawn that Mr. Sowers was turning into the driveway of Tracy's restaurant, which began at the point where Mr. Sowers struck the sewer basin.

(24) The surface of the berm of the road was about six inches lower than the surface of the sewer basin cover.

The Court concludes from the facts herein stated that Lawrence M. Sowers was negligent in driving his car at the time and place of the accident and that such negligence was the proximate cause of the injuries sustained by the plaintiffs.

The question for the Court to determine in this case is whether or not Mr. Sowers was "acting within the scope of his office or employment" at the time the accident happened.

Subsection (b) of Section 1346, Title 28 U.S.C.A., provides that "the law of the place where the act or omission occurred" is applicable. This has been construed by the Fourth Circuit Court of Appeals to mean that the Federal Law applies as to the creation of the relationship and that the State Law applies as to the liability.

"We look to the federal law and decisions to determine whether or not the person who inflicted the injury was an 'employee of the Government * * * acting within the scope of his office or employment'. We look to the local law for the purpose of determining whether the act with which he is charged gives rise to liability. The Tort Claims Act adopts the local law for the purpose of defining tort liability, not for the purpose of determining the relationship of the government to its employees." U. S. v. Sharpe, 4 Cir., 189 F.2d 239, 241.

In adopting this interpretation of the statute, the Court followed the rule laid down by the Supreme Court in United States v. Standard Oil Company of California, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067.

The Sixth Circuit Court of Appeals has held that the law of the state wherein the accident happened is applicable. Fries v. United States, 170 F.2d 726; Christian v. United States, 184 F.2d 523.

In these cases there was no distinction made with reference to the creation of the relationship and the question of liability. There was no occasion for making such distinction. Should the question be raised, the Court would undoubtedly follow the distinction made by the Fourth Circuit Court of Appeals in the case of United States v. Sharpe, supra.

The fourth syllabus of a decision by the Sixth Circuit is as follows: "The decision in Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] relates only to the law to be applied in exercise of diversity jurisdiction." Deupree v. Levinson, 186 F.2d 297, 298.

Counsel have not cited to the Court, nor has the Court found any case, either in the Federal Reports or in the Reports of the Supreme Court of Ohio, which is exactly in point.

The case of United States v. Eleazer, 4 Cir., 177 F.2d 914, 916, comes the

nearest to being in point with the case at bar. Here the Court said "It seems perfectly clear that, in driving his own automobile on this trip home on deferred leave, Lieutenant Talley was acting, not within the scope of his office or employment as a lieutenant in the Marine Corps, but for his own use and benefit and subject to the control of no one but himself. It is true that he had been ordered to report on September 1 at Corpus Christi and had been directed to travel there so that he could be reimbursed for the expense of travel at the regular mileage rate; but he and not the government selected the means of transportation and no officer of the government had any right to exercise control over his operation of the means chosen. All that the government was interested in was that he report for duty at Corpus Christi on Sept. 1, and he could travel there by rail, by bus, by car or by air as he saw fit. When he chose to drive his own car, instead of availing himself of commercial transportation, he was acting in furtherance of his own purposes, not those of the government; and his action in driving the car cannot reasonably be said to have been action taken within the scope of his employment or office."

Power to control is an essential element in the relation of master and servant and this power to control must exist with respect to the transaction out of which the injury arose. These principles are well stated in the second and third syllabi of the Eleazer case, supra, and read as follows:

"Where Marine Corps officer traveling home on deferred leave, in his own automobile, collided with plaintiff's oncoming automobile, officer was acting for own use and benefit and in furtherance of his own purposes and not in scope of his employment or office, and United States was not liable to plaintiff under Federal Tort Claims Act."

"The ground of liability of the master for the negligent act of the servant is that the servant is conducting the master's affairs and that the master has the right of control with regard thereto and is bound to see that they are so conducted that others are not injured thereby."

These principles are in accordance with the decisions of the State of Ohio. In the case of Senn v. Lackner, 157 Ohio St. 206, 105 N.E.2d 49, 51, the Supreme Court quoted approvingly from the Court of Appeals' opinion, 100 N.E.2d 419, as follows: " ' "In order to obligate a master to respond in damages for the negligence of a servant it is necessary not only that the servant be acting within the scope of his employment but the master must have the power of control and direction over the conduct of the servant."

" 'In the instant case the facts do not meet the test. There is no evidence whatever that the defendant had "the power of control and direction" over the salesman while the salesman was driving from his residence to his place of employment. The controlling rule is simply stated but the difficulty always lies in its application.' "

In the case of Rogers v. Allis-Chalmers Manufacturing Co., 153 Ohio St. 513, 92 N.E.2d 677, 684, 18 A.L.R.2d 1363, the Court quotes with approval from the opinion of Chief Justice Marshall in the case of Tarlecka v. Morgan, 125 Ohio State, 319, 181 N.E. 450, as follows:

" 'There is a clear distinction between acts done within the scope of the employment and acts done merely during the employment. "Scope of the employment" has never been accurately defined, although many attempts have been made. It cannot be accurately defined, because it is a question of fact and each case is sui generis. The act of an agent is the act of the principal within the course of the employment when the act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it.' "

The Court stated further "the principal or master must have the power of

control or direction over the conduct of the servant." The Court says that this rule is well stated in the case of Clark v. Fry, 8 Ohio St. 358, as follows: "The rule of respondeat superior, as its terms import, only arises out of the relation of superior and subordinate, is applicable to that relation wherever it exists, as between principal and agent, or master and servant, is co-extensive with it, and ceases when that relation ceases to exist; and the reason of it is to be addressed to the power of control and direction, which the superior has a right to exercise, and which, for the safety of others, he is bound to exercise over the acts of his subordinates."

■ It is to be noted by the Rogers case and the case of Tarlecka v. Morgan, supra, that scope of employment is a question of fact. In a jury case, if sufficient facts are present to warrant it, "scope of employment" would be a question for the jury to determine under proper instructions from the Court as to the law.

■ Mr. Sowers, the driver of the car which caused the collision in this case was an employee of the United States Government, the defendant herein, in the Fish and Wildlife Service of the Department of the Interior.

Prior to his departure from Fort Worth, his services were rendered in and about Fort Worth. Upon his arrival in Washington, his services for the Government would be of a different nature and would be performed in Washington.

His method of travel from Fort Worth to Washington was not dictated by the defendant, nor was it under the control of the defendant. It is true that the expenses of the removal of his family and his furniture was paid for by the Government and he was given a per diem allowance, but the Government did not tell him how or when to go. There was, in fact, no control by the Government over this transaction.

The conclusion of the Court is that the plaintiffs have failed to establish by a preponderance of the evidence under all the facts and circumstances of this case, that Lawrence M. Sowers was acting within the scope of his employment at the time and place of the collision.

As was stated at the beginning of this Decision, the case is pending on motion of counsel for the defendant to dismiss the plaintiffs' complaint. This motion will be overruled and judgment will be granted to the defendant upon determination of the case upon its merits.

The Court considers that this Decision is a sufficient Findings of Fact and Conclusions of Law to comply with the rules of procedure. No further findings will be required.

An Order of Judgment may be prepared by counsel for the defendant and submitted to the Court.