Donald E. WHITTENBERG et al., Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 7877.

United States District Court
S. D. Texas, Houston Division.

Dec. 12, 1956.

**354**

Fred Parks, Houston, Tex., for plaintiff, Donald E. Whittenberg and others.

Malcolm R. Wilkey, U. S. Atty., and Gordon J. Kroll, Asst. U. S. Atty., Houston, Tex., for defendant, United States.

CONNALLY, District Judge.

This is an action filed under the Federal Tort Claims Act, §§ 1346, 2671–2680, Title 28, U.S.C.A. Plaintiffs, Donald E. Whittenberg and Robert G. Heye, seek to recover of the United States for serious personal injuries which each received as result of an automobile collision between a vehicle owned by their employer, Garrett Oil Tools, Inc., in which the two plaintiffs were riding and a vehicle owned and operated by one Marvin Vaughan.

The collision occurred about 10:30 a. m. April 15, 1953, between the cities of Pierce and El Campo in Wharton County, Texas. Driving conditions were excellent. As the vehicles approached one another from opposite directions, Vaughan permitted his vehicle briefly to leave the paved portion of the highway. By reason of road repairs there in progress, this maneuver caused Vaughan to lose control. In an effort to regain the highway, Vaughan caused his car suddenly to cross the center line directly into the path of the vehicle occupied by the plaintiffs. The road repairs and the attendant danger were well and clearly marked and were obvious to both drivers. The conduct of Heye, the driver of the company car, and of Whittenberg, riding as a passenger in the front seat, in each instance was unexceptional. I find Vaughan negligent in permitting his car to leave the paved portion of the highway, in permitting it to cross the center line and to occupy the lane properly to be used by the plaintiffs' vehicle. Each such act of negligence constituted a proximate cause of the collision.

The workmen's compensation insurance carrier for the plaintiffs' employer paid compensation benefits to each plaintiff and paid substantial amounts on their behalf for medical and hospital services. Such carrier has intervened seeking to recover these outlays. Garrett Oil Tools, Inc. likewise has intervened seeking recovery of the value of its automobile.

The controlling issue in the case is that of the liability of the United States, that is, whether Vaughan, a civil service employee of several years standing, was acting within the scope of his office or employment at the time of the accident, under circumstances where the United States, if a private person, would be liable under Texas law (§ 1346(b), Title 28, U.S.C.A.). This question is not free of doubt and its determination, in my judgment, requires a full statement of the circumstances of Vaughan's employment and an examination of the pertinent authorities.

For a number of years prior to the collision, Vaughan had been a civilian employee of the United States Air Force at Kelly Air Force Base, San Antonio, Texas. He was a link trainer mechanic. In addition to his routine duties at his home

station with a supervisor (Watson N. Smith) and another mechanic (George P. Taylor) Vaughan constituted a three-man crew which was required to make semi-annual trips through Texas and Louisiana visiting other air force bases for the inspection and repair of the link trainer equipment there in use. It was during the course of such a trip that the accident occurred.

In making these trips a government owned tractor-trailer was used to carry the equipment, spare parts, etc., required in the work. While on occasion all three crew members rode in this single vehicle, for reasons of safety and convenience, customarily only two rode therein. Occasionally the third man traveled by rail, bus or other public conveyance. Normally, however, the third member secured authority to drive his personal automobile. This was far more convenient for all concerned in that it permitted the three to travel in close proximity and they were not dependent upon the uncertainties and delays of train and bus schedules, etc. Similarly, it provided a means of recreation and amusement during off-duty hours, a consideration of some moment as the trip frequently lasted some thirty to forty days. The crew members were paid their regular hourly wage while traveling from base to base. In addition, each received a per diem allowance while away from his permanent station. Of course the crew at all times was subject to orders from the home station and might be directed to return or deviate from their expected itinerary if so ordered.

Prior to the trip in question, Vaughan had volunteered the use of his car. Through proper channels he then requested of the military authorities the necessary authorization for such use. This was forthcoming as routinely was the case. It permitted Vaughan to travel at government expense by commercial or military aircraft, by common carrier, or by privately owned conveyance. As use

of the personal vehicle was not considered primarily for the advantage of the government, Vaughan's reimbursement for travel expense was limited by the amount which it would cost for him to travel by common carrier.

Smith, Taylor and Vaughan spent the night of April 14 at Victoria, Texas. The morning of April 15 they visited Foster Air Force Base near Victoria and found no work to be done. The supervisor, Smith, directed that they should proceed immediately to Ellington Air Force Base, their next scheduled stop. Smith was driving the tractor-trailer, with Taylor riding with him. Vaughan had been directed to follow behind the government vehicle. Vaughan was carrying the luggage for all three in his automobile. It was under these circumstances that Vaughan's negligence and the ensuing collision occurred.

In denying liability for Vaughan's conduct under *respondeat superior,* the United States urges the doctrine announced by the Court of Appeals for the Fourth Circuit in United States v. Sharpe [1] to the effect that resort must be had to federal authorities to determine the question of responsibility of the United States for the conduct of its servant; and on such question being answered in the affirmative, then state law applied to determine whether such conduct be tortious. The United States then cites United States v. Eleazer,[2] United States v. Sharpe, supra, and Jozwiak v. U. S.,[3] holding that military and civilian personnel while driving a personally owned vehicle on change of station orders, and while in a pay status, are not acting within the scope of their office or employment, and that their negligence in the operation of the vehicle does not impose liability on the United States. It is then argued that here, as in those cases, the use of the privately owned vehicle was permissive, not mandatory; that the government was not interested in how the employee arrived at the next station, only in that he

1. 189 F.2d 239.

2. 4 Cir., 177 F.2d 914.

3. D.C., 123 F.Supp. 65.

arrived on schedule; and that under the orders issued to Vaughan he could, with impunity, have adopted such method of transportation, route, speed, and manner of driving as he chose, conditioned only that he arrive at each scheduled stop on time.

■■ The plaintiffs cite, and urge, a number of cases [4] wherein resort is had to state authorities to determine the question of the responsibility of the United States for the servant's conduct, as well as that of whether the conduct in question is actionable. If there be conflict among the Circuits in this respect, or if the so-called federal authorities differ from those of this State, I consider the forceful language of the Court of Appeals for the Fifth Circuit in United States v. Campbell,[5] and in Moye v. U. S.[6] to commit the Courts of this Circuit to the latter view. Thus, the issue presented is whether the law of Texas would impose liability upon a private employer for the negligent driving by a mechanic of his personally owned vehicle, while en route from city to city to perform his regular duties, and while using the privately owned vehicle with the knowledge, consent, and at the expense of the master. In my judgment the law of this State would impose liability under these circumstances.

Probably the leading Texas authority dealing with the liability of an employer for the negligence of an employee in the use of a privately owned vehicle is the opinion of the Commission of Appeals, adopted by the Supreme Court of Texas, in American National Insurance Company v. Denke.[7] After an exhaustive review of the authorities from this and other jurisdictions, the Court distinguishes between the types of employment of salesmen and insurance agents, on the one hand, and the so-called "ordinary servant" on the other. The Court adopts the following definition by the Supreme Court of Wyoming in Stockwell v. Morris.[8]

"A servant is defined as a person employed to perform personal service for another in his affairs, and who, in respect to his physical movements in the performance of the service is subject to the other's control or right to control, while an agent is defined as a person who represents another in contractual negotiations or transactions akin thereto."

The employee whose negligence there was called in question was a salesman of insurance. As such he represented his principal in contractual negotiations. The Court held liability should be imposed upon the employer only if he had the right and power to direct and control the agent in the performance of the causal act or omission at the very instant of the act of neglect. Conceding that the agent in the performance of his duties as salesman was under strict control of the employer, the Court points out that the right of control extended only to this contractual feature of the work, and did not extend to the operation of his personal vehicle, for which liability was sought to be imposed.

The Court thereupon distinguished the then recent case of Texas Power and Light Company v. Denson,[9] opinion likewise by the Commission of Appeals and adopted by the Supreme Court, wherein the duties of the employee there involved, being a salesman and demonstrator of

---

4. Christian v. U. S., 6 Cir., 184 F.2d 523; Fries v. U. S., 6 Cir., 170 F.2d 726; United States v. Johnson, 9 Cir., 181 F. 2d 577; Marquardt v. U. S., D.C.S.D.Cal., 115 F.Supp. 160; United States v. Campbell, 5 Cir., 172 F.2d 500; United States v. Stewart, 5 Cir., 201 F.2d 135; Moye v. U. S., 5 Cir., 218 F.2d 81.

5. 5 Cir., 172 F.2d 500.

6. 5 Cir., 218 F.2d 81.

7. 128 Tex. 229, 95 S.W.2d 370, 107 A.L.R. 409.

8. 46 Wyo. 1, 22 P.2d 189, 191.

9. 125 Tex. 383, 81 S.W.2d 36.

electrical appliances, were such as to constitute him in the general performance of his duties a servant rather than an agent. The Denson case imposes liability in the ordinary master-servant relation where the use of his privately owned vehicle by the servant is within the scope of his general authority, in furtherance of the master's business, and for the accomplishment of the object for which the servant was employed.

In dealing with the principal-agent relationship, the Denke case is followed and approved in Burt v. Lochausen.[10] In dealing with the master-servant relation the Denson case is followed and approved in Schroeder v. Rainboldt [11] and Kennedy v. American National Insurance Company.[12] The last named authority, as interpreted by the Supreme Court in Burt v. Lochausen, supra, 249 S.W.2d at page 198, holds that the use of the vehicle by the servant must have been authorized by the master either expressly or by implication before liability is imposed. The distinction between the master-servant and the principal-agent relationships, and the different standards to be applied in testing the employer's liability, are recognized throughout this series of cases by the Texas Supreme Court.

It cannot be denied that in the performance of his duties Vaughan was a servant of the United States. He was employed to perform personal service.

He was subject in all respects and degrees to control and direction by his immediate superiors. The use of his personally owned vehicle under the circumstances was reasonably directed to the ends and for the accomplishment of the purposes of his employment. It was with the full knowledge, consent and at the expense of the government. Under the doctrine of the Denson, Schroeder and Kennedy cases liability of the master follows.

Cases under the Tort Claims Act from other jurisdictions which impose liability upon the government under similar fact situations may be listed as follows: United States v. Wibye;[13] Marquardt v. U. S., supra; Hopper v. U. S.;[14] Satterwhite v. Bocelato;[15] and Purcell v. U. S.[16]

The injuries received by each plaintiff were serious, painful and permanent. Heye's damages are fixed at $35,000 and those of Whittenberg at $27,500. From each amount the portion to which the workmen's compensation insurance carrier is subrogated will be deducted. Damages suffered by the employer from loss of the vehicle is the subject of stipulation.

The foregoing is adopted as Findings of Fact and Conclusions of Law. Clerk will furnish counsel with copy hereof. Counsel for plaintiff will submit order within ten days.

10. 151 Tex. 289, 249 S.W.2d 194.

11. 128 Tex. 269, 97 S.W.2d 679.

12. 130 Tex. 155, 107 S.W.2d 364, 112 A.L.R. 916.

13. 9 Cir., 191 F.2d 181.

14. D.C., 122 F.Supp. 181, affirmed 6 Cir., 214 F.2d 129.

15. D.C., 130 F.Supp. 825.

16. D.C., 130 F.Supp. 882.