THOMPSON ET AL., APPELLEES, *v.* MCNEILL, APPELLANT.

[Cite as Thompson *v.* McNeill (1990), 53 Ohio St. 3d 102.]

(No. 89-696—Submitted May 9, 1990—Decided August 15, 1990.)

*Marvin A. Shapiro, Dominic A. Musitano, Jr.,* and *Timothy P. Assaf,* for appellees.

*William J. Cady,* for appellant.

WRIGHT, J. The issue before us is the degree of care owed between participants in a sport, in this instance the game of golf. For the reasons that follow, we hold that between participants in such sporting events, only injuries caused by intentional conduct, or in some instances reckless misconduct, may give rise to a cause of action. There is no liability for injuries caused by negligent conduct.

There is a dearth of Ohio case law in this area. In *Rogers* v. *Allis-Chalmers Mfg. Co.* (1950), 153 Ohio St. 513, 41 O.O. 514, 92 N.E. 2d 677, the issue was whether a company could be held liable for injuries inflicted by one of its employees playing on a company-sponsored golf team. In dictum, this court remarked that a golfer assumes the ordinary risks of the game, one of which is the risk of being hit by a golf ball. *Id.* at 522, 41 O.O. at 518, 92 N.E. 2d at 681-682. However, the case was decided on the basis of the doctrine of *respondeat superior.* This court has never resolved the question of liability between participants in a sport.

It is necessary to fashion a special rule for tort liability between participants in a sporting event because playing fields, golf courses, and boxing rings are places in which behavior that would give rise to tort liability under ordinary circumstances is accepted and indeed encouraged. Paradoxically, however, amateur and professional athletes are expected to confine their behavior to that which is allowed by the rules of the game.

We say an act is negligent when "* * * the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain to occur, or believe that they will. There is merely a risk of such consequences, sufficiently great to lead a reasonable person in his position to anticipate them, and to guard against them. * * *" Prosser & Keeton, Law of Torts (5 Ed. 1984) 169, Section 31. An act is negligent if it "* * * falls below a standard established by the law for the protection of others against unreasonable risk of harm." *Id.* at 170. The difficulty in applying these principles of negligence to sports is that risk of inadvertent harm is often built into the sport. Injuries are a regular occurrence in many sports, such as football and hockey. Moreover, one who plays baseball, tennis, volleyball, soccer, basketball, or golf is subjected to risk of harm from balls struck or thrown travelling at considerable speed.

Acts that would give rise to tort liability for negligence on a city street or in a backyard are not negligent in the context of a game where such an act is foreseeable and within the rules. For instance, a golfer who hits practice balls in his backyard and inadvertently hits a neighbor who is gardening or mowing the lawn next door must be held to a different standard than a golfer whose drive hits another golfer on a golf course. A principal difference is the golfer's duty to the one he hit. The neighbor, unlike the other golfer or spectator on the course, has not agreed to participate or watch and cannot be expected to foresee or accept the attendant risk of injury. Conversely, the spectator or participant must accept from a participant conduct associated with that sport. Thus a player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct. Were we to find such a duty between co-participants in a sport, we might well stifle the rewards of athletic competition.

While we believe there can be no actionable negligence between participants in a sport, we do not embrace the notion that a playing field is a free-fire zone. We agree with the court in *Hanson, supra,* at 60, 526 N.E. 2d at 329, that "* * * an athlete is not immune from liability for an intentional tort," because "* * * the duty *not* to commit an intentional tort against another remains intact, even in the heat of battle * * *." (Emphasis *sic*.)

Our conclusion that between participants in a sport intentional or reckless misconduct gives rise to liability, as our conclusion that negligent misconduct does not, must be understood in the context of the rules of the sport. See *Marchetti* v. *Kalish* (1990), 53 Ohio St. 3d 95, 559 N.E. 2d 699. If, for example, a golfer knows another is within the line of flight of his shot and fails to offer the customary warning of "fore," liability might accrue. Such conduct could amount to reckless indifference to the rights of others.

The conduct of an athlete who intentionally injures another athlete in a way not authorized or anticipated by the customs and rules of the game violates the duty not to commit an intentional tort. A more subtle difficulty concerns the intermediate standard of recklessness: Can a player injured by another player's recklessness bring an action in tort? Taking into account the necessity for explaining the differences between recklessness as it is usually understood and recklessness in the context of a sporting event, we hold that one who is injured by the reckless[1] misconduct of a fellow participant in a sport may, under some circumstances, bring an action in tort.

The Restatement of Torts 2d defines "recklessness" as follows:

"The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially

---

[1] The term "reckless" is often used interchangeably with "willful" and "wanton." Our comments regarding recklessness apply to conduct characterized as willful and wanton as well.

greater than that which is necessary to make his conduct negligent." 2 Restatement of the Law 2d, Torts (1965), at 587, Section 500. Comment *f* to Section 500 contrasts recklessness and intentional misconduct: "While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." *Id.* at 590. Comment *a* to Section 500 adds that "* * * the risk must itself be an unreasonable one *under the circumstances.*" (Emphasis added.) *Id.* at 588.

What constitutes an unreasonable risk under the circumstances of a sporting event must be delineated with reference to the way the particular game is played, *i.e.,* the rules and customs that shape the participants' ideas of foreseeable conduct in the course of a game.

If the rules of a sport allow conduct intended to harm another player, as they do in boxing or football, for example, it follows that those same rules also allow behavior that would otherwise give rise to liability for recklessness. But any conduct which is characterized by the strong probability of harm that recklessness entails, and which occurs outside the normal conduct and customs of the sport, may give rise to liability. In the context of the game of golf, a player who hurls a club into the air in a moment of pique and injures another golfer should be held accountable.

The Restatement of Torts 2d supports the view that different standards of care should apply to those who inflict injuries in the course of a game as opposed to those who inflict injuries under ordinary circumstances: "Taking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages. Participating in such a game does not manifest consent to contacts which are prohibited by rules or usages of the game if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill. * * *" 1 Restatement of the Law 2d, Torts (1965) 86, Section 50, Comment *b.* See *Kabella* v. *Bouschelle* (1983), 100 N.M. 461, 463, 672 P. 2d 290, 292.

We cannot provide a single list of actions that will give rise to tort liability for recklessness or intentional misconduct in every sport. The issue can be resolved in each case only by recourse to the rules and customs of the game and the facts of the incident. In general, as Presiding Judge Milligan pointed out in his *Hanson* concurrence, "* * * the *quid pro quo* of an 'assumed greater risk' is a diminished duty. Thus, participants in bodily contact games such as basketball (and lacrosse) owe a lesser duty to each other than do golfers and others involved in non-physical contact sports." *Hanson, supra,* at 64, 526 N.E. 2d at 333.

Recognition of the inverse relationship between duty and dangerousness should enter into a court's decision-making process on a motion for summary judgment when the plaintiff alleges reckless or intentional misconduct. A court should inquire more specifically into the following factors suggested by Judge Milligan: "* * * the nature of the sport involved, the rules and regulations which govern the sport, the customs and practices which are generally accepted and which have evolved with the development of the sport, and the facts and circumstances of the particular case. * * *" *Id.*

The court of appeals explained its refusal to follow its own precedent in *McElhaney, supra,* by asserting that the *McElhaney* holding that negligence was not actionable applies only to

sports involving a high degree of physical contact. This distinction reveals the awareness of the court below that there are different duties and risks appropriate to different sports, but the contact-non-contact distinction does not sufficiently take into account that we are dealing with a spectrum of duties and risks rather than an either-or distinction. Is golf a contact sport? Obviously, a golfer accepts the risk of coming in contact with wayward golf shots on the links, so golf is more dangerous than table tennis, for instance, but certainly not as dangerous as kickboxing. Analyzing liability for injuries inflicted in sports in terms of a continuum along which the standard of care rises as the inherent danger of the sport falls is more useful than distinguishing sports by applying a black-and-white distinction between contact and non-contact sports.

Applying the foregoing theoretical scheme to the facts of the case before us, we hold that summary judgment for McNeill was appropriate. Shanking the ball is a foreseeable and not uncommon occurrence in the game of golf. The same is true of hooking, slicing, pushing, or pulling a golf shot. We would stress that "[i]t is well known that not every shot played by a golfer goes to the point where he intends it to go. If such were the case, every player would be perfect and the whole pleasure of the sport would be lost. It is common knowledge, at least among players, that many bad shots must

result although every stroke is delivered with the best possible intention and without any negligence whatsoever." *Benjamin* v. *Nernberg* (1931), 102 Pa. Super. 471, 475-476, 157 A. 10, 11.

Thompson was off to McNeill's right at such a sharp angle that she was not in the intended path of McNeill's ball. There was no recklessness here and certainly no intentional misconduct. The rules of golf require that one call out "fore" when a shot goes awry, but in this instance the ball was traveling so rapidly that such a warning would have availed nothing.

McNeill's shot was within the rules. As Thompson concedes, one who hits a golf ball into a water hazard may play the next shot from a spot two club lengths from where the ball entered the water or from where the previous ball was hit. Therefore it was foreseeable and within the rules that McNeill's next shot would come from the fairway. It was not a prohibited or reckless shot. McNeill did not recklessly expose Thompson to more danger than any golfer faces in participating in a game of golf.[2]

For the foregoing reasons we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

Moyer, C.J., Sweeney, Holmes, Douglas, H. Brown and Resnick, JJ., concur.

---

[2] Even were we to impose a negligence standard in this case, McNeill would not be liable for Thompson's injury because Thompson's position relative to McNeill placed Thompson outside the zone of danger. Thompson did not believe herself to be in danger, and said McNeill had hit a "freak" shot.

In a case decided on uncannily similar facts, *Walsh* v. *Machlin* (1941), 128 Conn. 412, 23 A. 2d 156, the court held that there was no negligence as a matter of law when a golfer was injured by a shot hit from about forty yards away and at an angle of approximately ninety degrees from its intended line of flight.