OPINION
On May 4, 1998, Richard and Theresa A. Marinucci filed a complaint in the Court of Claims of Ohio against the Ohio Department of Transportation ("ODOT"). The Marinucci's averred that Ruby M. Yates, Mr. Marinucci's supervisor in the Advertising Device Control ("ADC") section of ODOT, had made baseless allegations against Mr. Marinucci which prompted investigations of Mr. Marinucci. The Marinucci's set forth claims for relief of defamation, intentional infliction of emotional distress and loss of consortium.
A hearing was held in order to determine whether or not Ms. Yates was entitled to immunity pursuant to R.C. 2743.02(F) and9.86. On March 31, 1999, the trial court issued a judgment entry finding Ms. Yates did not act with malicious purpose, in bad faith or in a wanton or reckless manner and that her actions were not manifestly outside the scope of her employment. Therefore, the trial court concluded Ms. Yates was entitled to immunity. The Marinucci's ("appellants") have appealed to this court, assigning the following error for our consideration:
 THE COURT OF CLAIMS ERRED AS A MATTER OF LAW IN FINDING THAT RUBY YATES, RICHARD MARINICCI'S [sic] SUPERVISOR AT ODOT, "DID NOT ACT WITH MALICIOUS PURPOSE, IN BAD FAITH, OR IN A WANTON OR RECKLESS MANNER" AND THAT "YATES' ACTIONS WERE NOT MANIFESTLY OUTSIDE THE SCOPE OF HER EMPLOYMENT" AND THAT YATES WAS, THEREFORE, ENTITLED TO CIVIL IMMUNITY PURSUANT TO R.C. 2743.02(F) AND 9.86
AND THAT THE FRANKLIN COUNTY COURT OF COMMON PLEAS DID NOT HAVE JURISDICTION TO HEAR MARINICCI'S [sic] CLAIM AGAINST YATES.
Appellants contend the trial court erred in granting Ms. Yates immunity. In making this contention, appellants discuss issues relating to the elements of the underlying claim for defamation. However, whether or not the elements of defamation were shown is irrelevant to an immunity determination. Immunity of state employees is governed by R.C. 9.86 and 2743.02(F). R.C.9.86 states, in pertinent part:
 * * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
R.C. 2743.02(F) states, in pertinent part:
 A civil action against an officer or employee * * * that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.
Immunity is a question of law. Nease v. Medical CollegeHosp. (1992), 64 Ohio St.3d 396, 400. While the issue of immunity is a question of law, consideration of the specific facts is necessary. Long v. Bowling Green State Univ. (June 30, 1997), Franklin App. No. 96API12-1736, unreported. Matters involving credibility should be resolved by the trial court, and judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. Id., citing Brooksv. Ohio State Univ. (1996), 111 Ohio App.3d 342, 350.
As to scope of employment, an employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take such act outside the scope of employment. Elliot v. Ohio Dept. of Rehab. Corr. (1994),92 Ohio App.3d 772, 775. Rather, the act must be so divergent that it severs the employer-employee relationship. Id. Malicious purpose involves harboring ill will or enmity or exercising malice, and malice can be defined as the willful and intentional design to do injury or harm to another, usually seriously, through conduct that is unlawful or unjustified. Jackson v. Butler Cty.Bd. of Cty. Commrs. (1991), 76 Ohio App.3d 448, 453-454. Common law malice connotes hatred, ill will or a spirit of revenge.Jacobs v. Frank (1991), 60 Ohio St.3d 111,115.
Bad faith embraces more than bad judgment or negligence; it imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. Jackson at 454. Reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk — a risk greater than that necessary to make the conduct negligent. Thompson v. McNeill
(1990), 53 Ohio St.3d 102, 104-105. Further, the term "reckless" is often used interchangeably with the word "wanton" and has also been held to be a perverse disregard of a known risk. Jackson at 454.
In essence, appellants contend there was evidence Ms. Yates acted with malice in causing an investigation of Mr. Marinucci. The evidence from the hearing establishes the following. Mr. Marinucci and Ms. Yates worked in the ADC section of ODOT. Around June 1996, Mr. Marinucci was appointed to a "Q step group," a program designed to make the different processes in a section more efficient and to save money. Id. at 206, 209-210. Ms. Yates was not a member of the Q step group. According to Mr. Marinucci, Ms. Yates began to accuse the group of "destroying" the ADC section. Id. at 212. During this time period, Mr. Marinucci went on vacation to Disney World and had submitted his trip itinerary. Id. at 215. Ms. Yates posted this itinerary in a common area and placed a note on it which read "[t]ypical day for Marinucci." Id. at 215-216, 282-283; Plaintiff's exhibit No. 5.
In October 1996, Ms. Yates became the acting coordinator of the ADC section. (Tr. 265-266.) Mr. Marinucci testified that Ms. Yates then became "more focused" on him. Id. at 217. Mr. Marinucci testified that she singled him out at meetings and accused him of wasting state time. Id. at 218. At one staff meeting in March 1997, Mr. Marinucci and Ms. Yates got into a heated argument. Id. at 219-220, 266-267. According to Ms. Yates, Mr. Marinucci became difficult and argued about several issues.Id. at 266. Ms. Yates requested they meet later to discuss the incident. Id. at 219-220, 268. Mr. Marinucci testified that he requested a union steward be at the meeting. Id. at 220. According to Mr. Marinucci, Ms. Yates refused. Id. Ms. Yates testified that when they met later that day, Mr. Marinucci asked for a union steward, she said "fine," but Mr. Marinucci began yelling and screaming, was very angry and "kind of out of control," and "that was kind of it. Everything blew up." Id. at 268, 287.
As a result of this incident, Mr. Marinucci filed a grievance, including a charge of sexual harassment, against Ms. Yates. Id. at 234. As a result of the same incident, Ms. Yates gave Mr. Marinucci oral and written reprimands. Id. at 251-252, 268-269. The written reprimand stated Mr. Marinucci had disrupted the work environment, was disrespectful to coworkers, was argumentative at a staff meeting and was abusive toward Ms. Yates. (Defendant's exhibit No. B.)
On May 6, 1997, Ms. Yates contacted Betty Mendenhall, an administrative investigator at ODOT. Ms. Mendenhall's duties included making sure all policies and procedures set forth by the deputy directors were enforced. (Tr. 47.) Ms. Yates testified that because of Mr. Marinucci's continuing threats against her, she asked Ms. Mendenhall to check into what kind of person he was.Id. at 297.
It is essentially Ms. Yates' action in instigating an investigation against Mr. Marinucci which forms the basis of appellants' suit against the state. Appellants contend there is compelling and credible evidence that Ms. Yates "concocted" and published defamatory statements about Mr. Marinucci in order to "get back at him." Appellants assert that Ms. Yates made the following false allegations against Mr. Marinucci: (1) that he had been contacted by a Pennsylvania probation officer; (2) that he had a felony conviction in Pennsylvania; (3) that because of such felony conviction, Mr. Marinucci had falsified his employment application; (4) that he had lost his real estate license; and (5) that he owed the Internal Revenue Service ("IRS") money.
Mr. Marinucci testified that he thought the charges against him stemmed from his involvement in the Q step group. Id. at 245. Appellants assert the proof of Ms. Yates' malice is that there is no factual basis for the allegations and that Mr. Marinucci and Ms. Yates had a contentious work history. We find there was some competent, credible evidence to support a finding that, in instigating the investigation of Mr. Marinucci, Ms. Yates was not acting manifestly outside the scope of her employment and did not act with malicious purpose, in bad faith or in a wanton or reckless manner.
Ms. Yates testified that Mr. Marinucci was "constantly threatening me that he was telling other staff members that he wasn't finished with me." Id. at 270. Ms. Yates stated that Mr. Marinucci "continually threatened" and "tried to keep the office in an uproar." Id. Mr. Marinucci's behavior made her "quite upset." Id. at 286. It was Ms. Yates' understanding that she had the right to go to Ms. Mendenhall and voice her concerns if she felt there were problems with an individual and threats to her section. Id. at 272, 298. Ms. Mendenhall testified that it was not unusual to receive complaints from a manager. Id. at 118. Ms. Yates requested Ms. Mendenhall investigate Mr. Marinucci because of his "constant threats, constant disruption in the office, and not knowing whether he would follow through on anything or exactly what type of a person he was." Id. at 278.
Ms. Yates' initial conversation with Ms. Mendenhall was on May 6, 1997. Ms. Yates expressed to Ms. Mendenhall her concerns about Mr. Marinucci and his actions in the office. Id. at 298. According to Ms. Yates, she initially told Ms. Mendenhall that Mr. Marinucci used to sell real estate in Pennsylvania but that he no longer did and that he had told her and others in the office that he owed the IRS money. Id. at 300-301. Ms. Yates testified that her purpose in telling Ms. Mendenhall this information was "[j]ust to give her a little bit of background on him. That was all I knew about him." Id. at 301. Ms. Yates denied making any allegation against Mr. Marinucci regarding his employment application and testified she never told Ms. Mendenhall that Mr. Marinucci had been contacted by a probation officer. Id. at 273, 302. Ms. Yates testified that she learned of the allegation involving a probation officer by Ohio State Highway Patrol Trooper John K. Ferguson and that Ms. Mendenhall informed her that Mr. Marinucci's employment application had not been signed or notarized. Id. at 274, 302.
Ms. Mendenhall testified that Ms. Yates made an allegation that Mr. Marinucci had not signed or notarized his employment application. Id. at 50-51. Ms. Mendenhall also testified that Ms. Yates told her that it had been heard around the office that Mr. Marinucci was in trouble with the IRS and that he had filed sexual harassment charges against Ms. Yates. Id. at 51-52. Ms. Yates and Ms. Mendenhall also discussed Mr. Marinucci's conduct around the office. Id. at 52. Ms. Mendenhall testified that Ms. Yates did not allege that Mr. Marinucci had been contacted by a probation officer. Id. at 116. Ms. Mendenhall made notes of her May 6, 1997 conversation with Ms. Yates. (Plaintiff's exhibit No. 8.) Such notes said nothing about Ms. Yates making an allegation that Mr. Marinucci had falsified his employment application. Id. Ms. Mendenhall then called her supervisor, Charles Nishwitz, and he initiated/authorized an administrative investigation of Mr. Marinucci. Id. at 82.
Mr. Nishwitz testified that Ms. Mendenhall told him that Ms. Yates had alleged Mr. Marinucci had been contacted by a probation officer. Id. at 139. However, Mr. Nishwitz became confused after he spoke with Ms. Yates who informed him that she was unaware of such allegation. Id. at 160. Mr. Nishwitz testified that when he questioned Ms. Mendenhall on this issue, Ms. Mendenhall told him that it was an IRS agent that had called, not a probation officer, and Mr. Nishwitz then understood that there had been a mix-up. Id. at 178. Ms. Mendenhall testified that when she first spoke with Mr. Nishwitz about Mr. Marinucci, she compared having an IRS agent calling the office to having a probation officer calling the office. Id. at 117-118.
The official allegation that was the subject of the administrative and criminal investigations against Mr. Marinucci was falsification of an employment application. In both investigations, the allegation was unfounded.
The evidence as a whole makes it clear that the allegation against Mr. Marinucci involving a probation officer was the result of a miscommunication between Ms. Mendenhall and Mr. Nishwitz and not the result of Ms. Yates making such an allegation. Indeed, Mr. Nishwitz, as part of the normal course of business, notified the Department of Public Safety and the governor's office of the administrative investigation of Mr. Marinucci. Id. at 136-137, 152. These entities decided to initiate a criminal investigation of Mr. Marinucci. Id. at 138-139, 152. Trooper Ferguson, who had been assigned to the criminal investigation, interviewed Ms. Yates, who denied being the source of the allegation against Mr. Marinucci involving a probation officer. Id. at 188-190.
Based on the above evidence, the trial court did not err in granting Ms. Yates immunity. Given Mr. Marinucci's behavior at work and threats against Ms. Yates, Ms. Yates did not act outside of the scope of her employment or maliciously, recklessly or in bad faith by contacting Ms. Mendenhall and requesting she look into what kind of person he was. There was some competent, credible evidence that the only information relayed by Ms. Yates was her concerns about Mr. Marinucci's behavior in the office, that Mr. Marinucci owed the IRS money, that he had once had a real estate license in Pennsylvania but that he no longer did, and that he had filed a sexual harassment grievance against Ms. Yates. There was some competent, credible evidence that the information relayed was true and that the source of certain "information" was Mr. Marinucci himself, who talked about such matters at the office. Given this, and the fact that a finding of malice would have to be based at least in part upon a credibility determination, we will not reverse the trial court's determination that Ms. Yates was entitled to immunity pursuant to R.C.2743.02(F) and 9.86.
Accordingly, appellants' sole assignment of error is overruled.
Having overruled appellants' sole assignment of error, the judgment of the Court of Claims of Ohio granting Ms. Yates immunity is affirmed.
Judgment affirmed.
BRYANT, J., and BOWMAN, P.J., concur.