OPINION
Appellant David Emerick, a minor, by and through his mother and natural guardian, Jean Jacobs, appeals the October 19, 1999 Judgment Entry of the Tuscarawas County Court of Common Pleas which granted summary judgment against him. Appellees are the Indian Valley Local Board of Education, Joel Ribo, and Aaron VanVickle.
 STATEMENT OF THE CASE AND FACTS
On October 21, 1997, appellant was injured during a wiffle ball game conducted in a required physical education class at Indian Valley High School. On that date, appellant was fourteen years old and a freshman at the high school. Appellant's physical education class was supervised by a substitute teacher, appellee, Joel C. Ribo. The class was playing wiffle ball in the school's gymnasium. An unknown employee of the Indian Valley School had wrapped tape around the barrel and the handle of the bat, apparently for strengthening the bat and enabling the students to hit the ball further. Aaron VanVickle, also a student, was a participant in the wiffle ball game and was among the first to bat. Appellant was on Aaron's team and stood with other teammates along the third base line waiting for a turn at bat. As he waited, appellant was talking with a classmate, Ashley Lamb. Appellant had his back turned to the batter. Aaron stepped up to the plate and took a swing at the pitch. As he swung, the bat slipped out of his hands. The bat flew through the air and struck appellant squarely on the jaw. Mr. Ribo saw appellant was hurt and sent him to the school office with a student escort. The office contacted appellant's mother who arrived approximately forty-five minutes after the incident. During this period, appellant sat quietly in the office. The office did not administer medical attention or contact a doctor. Appellant's mother transported appellant to a local hospital. After x-rays, appellant was diagnosed with a broken jaw. On May 18, 1998, appellant filed a complaint alleging negligence and reckless behavior against appellees. On July 23, 1999, Indian Valley Local Board of Education and Joel Ribo filed their Motion for Summary Judgment. On July 29, 1999, Aaron VanVickle filed his Motion for Summary Judgment. Thereafter, appellant filed a timely Brief in Opposition to both motions for summary judgment. On October 19, 1999, the trial court filed two separate judgment entries granting summary judgment against appellant and dismissing the complaint. It is from these judgment entries appellant prosecutes this appeal assigning the following as error:
 I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE APPELLEE, INDIAN VALLEY LOCAL BOARD OF EDUCATION'S, MOTION FOR SUMMARY JUDGMENT THEREBY DISMISSING THE APPELLEE, INDIAN VALLEY LOCAL BOARD OF EDUCATION.
 II. WHETHER THE TRIAL COURT ERRED IN GRANTING THE APPELLEES, VANVICKLES', MOTION FOR SUMMARY JUDGMENT, THEREBY DISMISSING THE APPELLEES, VANVICKLES.
 I
Indian Valley Local Board of Education
In his first assignment of error, appellant maintains the trial court erred in granting the motion for summary judgment in favor of the Indian Valley Local Board of Education and Joel C. Ribo. Specifically, appellant maintains the trial court improperly applied R.C. 2744.02 in this instance. We disagree. R.C. Chapter 2744 provides a three-tiered analysis for determining the availability of sovereign immunity to political subdivisions. R.C.2744.02(A)(1) provides that a political subdivision is generally not liable for injury, death or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of that political subdivision. This provision is generally referred to as the "blanket immunity" provision. It is undisputed in the instant case appellee Indian Valley Local Board of Education is a political subdivision performing governmental functions and is, therefore, initially provided sovereign immunity under the blanket immunity provision noted supra. It would lose its immunity only if the allegations set forth by appellants demonstrate its conduct falls within one of the statutorily created exceptions listed in R.C. 2744.02(B), and no other statutory defense is available.
R.C. 2744.02(B) lists five exceptions to the blanket immunity provision described above. The only subsection relevant herein is R.C. 2744.02(B)(4), which provides: (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.
(Emphasis added.) We find this section precludes recovery for negligent acts committed on public grounds which are not due to physical defects within or on the grounds of a building used in connection with a governmental function. Because we find this section contemplates a defect of the building or the grounds surrounding a building used for governmental functions, we find this exception to the blanket immunity inapplicable in this instance. Appellant's first assignment of error with respect to the Indian Valley Local Board of Education is overruled. Joel Ribo Appellant also maintains the trial court erred in finding Joel Ribo, the substitute teacher, was also covered by the protections of the sovereign immunity statute. R.C. 2744.03 provides employees of political subdivisions immunity in certain circumstances. Specifically, it states: (A) In a civil action brought against * * * an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 * * * (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.
Appellant's complaint alleges Mr. Ribo failed to properly supervise the class in which appellant was injured; failed to protect appellant; and either created or allowed a dangerous situation to exist thereby violating a duty to appellant. Mr. Ribo supervised a physical education class. There is no evidence or indication any of his actions in supervising the class, or in his decision to send appellant to the office were malicious, done in bad faith or done in a wanton or reckless manner. Accordingly, we find immunity applies to the actions of Mr. Ribo. Appellant's first assignment of error is overruled.
 II
In appellant's second assignment of error, he maintains the trial court erred in granting Aaron VanVickle's motion for summary judgment. Specifically, appellant maintains the landmark Ohio Supreme Court case, Marchetti v. Kalish (1990), 53 Ohio St.3d 95, does not apply because appellant was not a voluntary participant in a recreational or sports activity. In Marchetti, supra, the Ohio Supreme Court held that "before a party may proceed with a cause of action involving injury resulting from a recreational or sports activity, reckless or intentional conduct must exist." Id. at 99-100; see, also, Kline v. OID Assoc., Inc. (1992), 80 Ohio App.3d 393. The Court further announced that the standard of liability is the same regardless of whether the activity was organized or unorganized, supervised or unsupervised, or engaged in by children or adults. Marchetti, supra at 98. In reaching this conclusion, the Marchetti court reasoned: The position taken by the Restatement involves an examination of the injured person's scope of consent in the context of the particular rules of the recreational or sports activity involved. Hence, the emphasis under the Restatement would be initially on the consent of the plaintiff rather than on the conduct of the other player. The next step would entail an analysis by the trial court of the applicable rules of the game or sport, and then superimposing these rules on the plaintiff's state of mind to determine the scope of his or her consent. The present case, or indeed any case involving children's recreational or sport activities, demonstrates the difficulty associated with this standard. We believe that requiring courts to delve into the minds of children to determine whether they understand the rules of the recreational or sports activity they are engaging in could lead to anomalous results. In this context, we perceive no reason to distinguish between children and adults. The policy which we and other courts seek to advance was set forth in Nabozny, supra: "[T]he law should not place unreasonable burdens on the free and vigorous participation in sports by our youth. However, we also believe that organized, athletic competition does not exist in a vacuum. Rather, some of the restraints of civilization must accompany every athlete onto the playing field. One of the educational benefits of organized athletic competition to our youth is the development of discipline and self-control." Moreover, the court in Ross, supra, reiterated this policy, stating that "[f]ear of civil liability stemming from negligent acts occurring in an athletic event could curtail the proper fervor with which the game should be played and discourage individual participation, yet it must be recognized that reasonable controls should exist to protect the players and the game. Balancing these seemingly opposite interests, we conclude that a player's reckless disregard for the safety of his fellow participants cannot be tolerated. If a plaintiff pleads and proves such recklessness, he may seek relief for injuries incurred in an athletic competition." Thus, our goal is to strike a balance between encouraging vigorous and free participation in recreational or sports activities, while ensuring the safety of the players. The standard announced today does not curtail, but indeed enhances this objective, regardless of whether the participants are children or adults. We therefore decline to adopt the analysis under the Restatement of Torts 2d, Sections 50 and 892A. Traditional tort concepts place the emphasis on the conduct or actions of the tortfeasor. Thus, we join the weight of authority set forth above and require that before a party may proceed with a cause of action involving injury resulting from a recreational or sports activity, reckless or intentional conduct must exist. [FN3] We hold that where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either "reckless" or "intentional" as defined in Sections 500 and 8A of the Restatement of Torts 2d. Marchetti at 99-100. The underlying rationale of the Court's decision is that, in order to strike a balance between encouraging vigorous and free participation in sports activities and safety concerns, participants will be deemed to have assumed the ordinary risks of the activity and will be held liable only for reckless or intentional conduct. Id. at 99. While recognizing the validity of the holding, appellant herein contends he is not bound by the rule set forth in Marchetti because he did not voluntarily assume the risk of participating in the wiffle ball game. This contention is based on the undisputed fact that appellant was required to participate in the physical education class. The Supreme Court decided a similar case, Thompson v. McNeill (1990), 53 Ohio St.3d 102, on the same date as Marchetti. In Thompson, a golfer was injured when she was struck by a golf ball. The Supreme Court again addressed the issue of liability of participants in a sports activity and held as follows:
 1. Between participants in a sporting event, only injuries caused by intentional conduct, or in some instances reckless misconduct, may give rise to a cause of action. There is no liability for injuries caused by negligent conduct. (Marchetti v. Kalish [1990], 53 Ohio St.3d 95, 559 N.E.2d 699, approved and followed.)
 2. A player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct.
(Paragraphs one and two of the syllabus). It appears at least some portion of the reasoning underlying the Supreme Court's decisions in Marchetti and Thompson was not based on an "assumption of the risk" defense, but, rather, was based on the lack of duty owed to sports participants because of the foreseeability of injuries. Thus, following such reasoning, it would be irrelevant whether appellant's participation in the physical education class was voluntary or involuntary. Further, we note the above-quoted syllabus in Thompson did not require "voluntary" participation. While we acknowledge the participants in the golf game at issue in Thompson were adults and engaged in a voluntary activity, the syllabus in no way limited its analysis to voluntary behaviors. Instead, the syllabus, and the opinion focused on the forseeability of potential injuries arising from sporting activities:
 The difficulty in applying these principles of negligence to sports is that risk of inadvertent harm is often built into the sport. Injuries are a regular occurrence in many sports, such as football and hockey. Moreover, one who plays baseball, tennis, volleyball, soccer, basketball, or golf is subjected to risk of harm from balls struck or thrown traveling at considerable speed.
Acts that would give rise to tort liability for negligence on a city street or in a backyard are not negligent in the context of a game where such an act is foreseeable and within the rules. For instance, a golfer who hits practice balls in his backyard and inadvertently hits a neighbor who is gardening or mowing the lawn next door must be held to a different standard than a golfer whose drive hits another golfer on a golf course. A principal difference is the golfer's duty to the one he hit. The neighbor, unlike the other golfer or spectator on the course, has not agreed to participate or watch and cannot be expected to foresee or accept the attendant risk of injury. Conversely, the spectator or participant must accept from a participant conduct associated with that sport. Thus a player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct. Were we to find such a duty between co-participants in a sport, we might well stifle the rewards of athletic competition.
Id. 104-105. In accordance with the above authority, and in light of the deposition testimony of appellant, we find the trial court did not err in determining Mr. VanVickle was immune from liability because he did not engage in intentional or reckless conduct. In accordance with the above decisions of this Supreme Court, we find no error in the trial court's decision to grant summary judgment in favor of Mr. VanVickle on the negligence claim against him. Appellant's second assignment of error is overruled.
The judgment of the Tuscarawas County Court of Common Pleas is affirmed.
 __________________ HOFFMAN, P.J.
By: Hoffman, P.J., Farmer, J. and Edwards, J. concur.