[Cite as *Lewis v. Cleveland State Univ.*, 2010-Ohio-2654.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JOSEPH LEWIS

     Plaintiff

     v.

CLEVELAND STATE UNIVERSITY

     Defendant
     Case No. 2006-07457

Judge Joseph T. Clark
Magistrate Lewis F. Pettigrew

DECISION

{¶ 1} On May 15, 2009, the magistrate issued a decision recommending judgment for defendant.

{¶ 2} Civ. R. 52(D)(3)(b)(I) states, in part: "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i)." Plaintiff timely filed his objections and a transcript of the trial. By entry dated July 31, 2009, plaintiff was granted leave to supplement his objections. Defendant did not file a response to the objections.

{¶ 3} Plaintiff, an African American, brought this action alleging breach of contract, racial discrimination, and ethnic intimidation in violation of R.C. 2307.70(A) and 2927.12. Plaintiff's claims arose in connection with his 2002-2003 efforts to complete his doctoral studies at defendant, Cleveland State University (CSU), Maxine Goodman Levin College of Urban Affairs. One of the required courses for plaintiff's Ph.D. program was Quantum Research Methods (UST 803.) Plaintiff took that course in the fall

semester of 2002. At some point during the semester, plaintiff learned that he was in danger of failing. Plaintiff filed a "formal complaint" against the professor, Sandra Kaufman Ph.D., by way of a letter written to William Bowen Ph.D., CSU's graduate program director. Plaintiff contends that the bulk of his problems at CSU arose after he filed the complaint.

{¶ 4} In spring of 2003, plaintiff repeated the UST 803 course with Dr. Bowen as his instructor. He received a grade of "C." Plaintiff then filed a grade dispute with the Graduate College Grade Dispute Committee. In the course of the proceedings, plaintiff was advised that he needed to achieve a grade of "B" or better in the course in order to participate in the comprehensive examinations that were required of all Ph.D. candidates. He was advised that he could retake UST 803 and that if he received a "B" or better he could continue with his doctoral studies.

{¶ 5} Also in the spring semester, plaintiff received a grade of "C" in another course, Public Administration Seminar (UST 830). He filed a grade dispute concerning that course and both disputes were followed through CSU's procedural process. Neither dispute was resolved in plaintiff's favor. As of the time of trial, plaintiff had not yet repeated UST 803, taken the comprehensive exams, or received a Ph.D., although defendant contends he has always been welcome to do so.

{¶ 6} Plaintiff has alleged that defendant is liable for breach of contract in that CSU professors and administrators engaged in misconduct that prevented him from completing his doctoral degree. He further contends that certain CSU staff committed criminal acts against him, including ethnic intimidation and that, during his internship with the Federation for Community Planning, he was discriminated against on the basis of his race in violation of R.C. Chapter 4112.

{¶ 7} The magistrate first addressed plaintiff's claim of racial discrimination. The magistrate concluded that the claim was without merit because plaintiff had failed to prove that he had an employment relationship with defendant for the purposes of a R.C.

Chapter 4112 claim.[1]

{¶ 8} With respect to the breach of contract claim, plaintiff asserted three separate bases for such claim, but he has objected to only two of the magistrate's conclusions. As to plaintiff's claim that he was denied his contractual right to challenge his grades and was prohibited from pursuing his Ph.D., the magistrate stated that "[t]he primary dispute between the parties is that plaintiff believes he should have been eligible to take comprehensive examinations and to obtain his Ph.D. if he maintained a "B" average in all of his courses, whereas defendant insists that plaintiff needed to achieve a grade of "B" or better in each of his required core courses." The magistrate concluded that plaintiff's understanding of the grade requirements was mistaken and, hence, that he had failed to establish a breach of contract on that basis.

{¶ 9} The magistrate next addressed plaintiff's claim regarding the grade dispute procedure. The magistrate found that, although the procedures may have been "one-sided in favor of the professor," plaintiff had agreed to abide by those procedures when he enrolled at CSU. Accordingly, the magistrate found no breach of contract on that basis.

{¶ 10} With respect to plaintiff's claims of criminal conduct and ethnic intimidation, the only evidence presented at trial concerned alleged racial slurs and threatening comments made by Dr. Bowen. The magistrate found that the evidence was insufficient to support the claims and concluded that "[i]nasmuch as Dr. Bowen's alleged slurs and threats are the crux of the claims brought pursuant to R.C. 2307.70(A)

---

[1]R.C. 4112.02 provides in part that:

"It shall be an unlawful discriminatory practice:

"(A) For any *employer*, because of the race, * * * national origin, * * * or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." (Emphasis added.)

and 2927.12,[2] plaintiff has failed to meet his burden of proof."

{¶ 11} Lastly, the magistrate addressed the issue of civil immunity under R.C. 2743.02(F) and 9.86. Based upon the totality of the evidence presented, the magistrate concluded that defendant's employees Maria Codinach, and Drs. Bowen, Kaufman, Jennifer Alexander, Mark Rosentraub, and Mark Tumeo "acted within the scope of their employment with defendant at all times relevant * * * [and] did not act with malicious purpose, in bad faith, or in a wanton or reckless manner toward plaintiff." The magistrate noted that plaintiff had stated at trial that he wished to withdraw his request for an immunity determination regarding Drs. Rosentraub and Alexander; however, it was recommended that all of the named employees be entitled to civil immunity.

{¶ 12} Plaintiff has asserted four primary objections to the magistrate's decision, all of which generally reiterate the arguments asserted at trial and in his post-trial brief. In addition, plaintiff objects to certain evidentiary rulings. The court is required to independently review plaintiff's objections "'to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.'" *Chan v. Tasr*, Hamilton App. No. C-070275, 2008-Ohio-1439, quoting Civ.R. 53(D)(4)(d).

{¶ 13} Plaintiff's first objection concerns the magistrate's finding that there was no employment relationship between plaintiff and defendant. Plaintiff asserts that the finding is against the manifest weight of the evidence, and contrary to statutory and

---

[2]R.C. 2307.70(A) provides that "[a]ny person who suffers injury or loss to person or property as a result of an act committed in violation of section 2909.05, 2927.11, or 2927.12 of the Revised Code has a civil action and may recover in that action full damages * * * for emotional distress, the reasonable costs of maintaining the civil action, and reasonable attorney's fees."

The statute addressing ethnic intimidation is found at R.C. 2927.12 which states:

"(A) No person shall violate section 2903.21 [aggravated menacing], 2903.22 [menacing], 2909.06 [criminal damaging or endangering], or 2909.07 [criminal mischief], or division (A)(3), (4), or (5) of section 2917.21 [telephone harassment] of the Revised Code by reason of the race, color, religion, or national origin of another person or group of persons.
"(B) Whoever violates this section is guilty of ethnic intimidation." Id.

constitutional law. Plaintiff takes issue with the testimony relied upon by the magistrate, and asserts that the magistrate incorrectly stated the dollar amounts of plaintiff's stipend and tuition grant.

{¶ 14} In making his finding, the magistrate relied largely upon the testimony of Frances Hunter, defendant's then graduate assistant intern coordinator. Hunter related that plaintiff had an internship with the Federation of Community Planning (FCP), that he was paid a $1,000 stipend by the FCP in exchange for work performed for it, and that he received a $1,000 tuition grant from CSU for participating in the program. The magistrate stated that Hunter did not consider plaintiff to be an employee of CSU. Plaintiff disagrees with that statement and contends that Hunter stated otherwise. The court has reviewed the transcript and finds that Hunter at no time stated that plaintiff was employed by defendant.

{¶ 15} Hunter testified that plaintiff had two contracts: "a contract with the Federation of Community Planning for the stipend [and plaintiff was] on their payroll, and [plaintiff was] under their guidelines. The other contract [was] specifically only for the tuition grant through Cleveland State University * * * and that's the contract for the tuition." (Transcript Page 208, Lines 18-24; Page 209, Lines 1-3.) Hunter also clarified on direct examination that the FCP was an outside research organization that was not a part of CSU. (Transcript Page 213, Lines 9-22.) As noted by the magistrate, Hunter's testimony was bolstered by the language of the "Graduate Tuition Grant Services Agreement"[3] that governed plaintiff's internship. (Defendant's Exhibit bb.) That document provides that where a tuition grant is tied to an internship, the hours of service attributed to CSU should be listed as "0." In short, the evidence and testimony make clear that any work performed by plaintiff was at the direction of the FCP, and was paid for by it. Accordingly, the court concludes that the magistrate properly determined the factual issues and appropriately applied the law in finding that plaintiff failed to prove that he was an employee of CSU. Therefore, it is immaterial whether the dollar amounts of plaintiff's stipend and tuition grant were misstated. Plaintiff's first objection is OVERRULED.

{¶ 16} In his second objection, plaintiff argues that the magistrate erred in finding that defendant did not breach its contract with plaintiff. It is undisputed that plaintiff had

---

[3]The magistrate noted that the second page of Defendant's Exhibit bb was not attached to the

a contract with defendant by virtue of his enrollment and attendance in classes, and that the terms of the agreement are found in the university catalogue and handbook. See *Bleicher v. Univ. of Cincinnati College of Med.* (1992), 78 Ohio App.3d 302, 308; *Embrey v. Central State Univ.* (Oct. 8, 1991), Franklin App. No. 90AP-1302.

{¶ 17} Plaintiff first contends that the magistrate's finding that a grade of "B" or better was required in plaintiff's core courses was against the manifest weight of the evidence and contrary to statutory and constitutional law. The basis for this portion of the objection is that the magistrate admitted into evidence Defendant's Exhibit X, CSU's Urban Studies and Public Affairs Student Handbook (student handbook) over plaintiff's objection. Although plaintiff also offered, and had admitted, a more current version of the handbook (Plaintiff's Exhibit 29), plaintiff argues that he sought admission of such exhibit only to show that defendant's version of the handbook was fraudulent in that it did not bear an official CSU insignia. Thus, plaintiff contends that the magistrate should not have considered the language of either version of the student handbook in his decision.

{¶ 18} Specifically, the magistrate noted that the student handbook contained a section concerning Ph.D. course work which stated that: "*[a] minimum grade of 3.0 ('B') is required for all core courses; a grade below 3.0 requires repeating the course.*" (Emphasis in original.) The magistrate compared that language to a provision of the Graduate Catalog for Urban Studies and Public Affairs (graduate catalog), which plaintiff claims is controlling, that required completion of "a common core of five courses with a *grade point average* of 3.0 or better." (Emphasis added.) Plaintiff insists that, for a variety of reasons, he has been unjustly held to the higher standard stated in the student handbook. However, plaintiff has demonstrated no legal or evidentiary basis for the exclusion of Exhibit X, the student handbook, from the evidence. The lack of an official CSU insignia on the document does not destroy its authenticity. The court finds that the magistrate did not err in admitting Defendant's Exhibit X, or in considering its provisions in his determination.

{¶ 19} Moreover, even if Exhibit X had not been admitted, the witnesses who testified were consistent in stating that the requirement of a grade point average of B or better in the five core courses meant that the average grade for all of the student

exhibit or admitted into evidence at trial.

assignments completed in each course must not fall below a grade of B. In addition, Mark Tumeo, Ph.D., former dean of the graduate college, explained during his testimony that the graduate catalog was intended to summarize the requirements of the various graduate programs but that each program had a specific handbook that detailed its requirements and clearly required a grade of B or better in each course. (Transcript, Page 51, Lines 18-24; Page 52, Lines 1-3.) That testimony is consistent with the grade requirement section of the graduate catalog which describes a grade of B as "[a]cceptable graduate attainment" and a grade of B- as "[a]ttainment below graduate standards." (Defendant's Exhibit jj.) In sum, the greater weight of the evidence supports the conclusion that CSU did not breach its contract with plaintiff by requiring that he achieve a grade of "B" or better in UST 803, or in any of his five core courses.

{¶ 20} Plaintiff further argues in his second objection that the magistrate erred in finding that defendant did not breach its contract with him by virtue of its arbitrary grading and unfair grade-dispute process. The basis of this objection is not specifically stated. However, upon review of the transcript, the court finds that the magistrate's decision that the grading dispute procedures were clearly set forth in the catalog and that CSU substantially complied with those procedures is supported by competent, credible evidence. Accordingly, the court concludes that the magistrate properly determined the factual issues and appropriately applied the law with respect to plaintiff's breach of contract claims. Plaintiff's second objection is OVERRULED.

{¶ 21} In his third objection, plaintiff argues that the magistrate erred in concluding that Dr. Bowen did not engage in ethnic discrimination or criminal misconduct. The only evidence of such conduct that was presented at trial was plaintiff's own testimony and an undated letter that he allegedly delivered to CSU's affirmative action office. In the letter, plaintiff stated that he had been a victim of threats and harassment by Dr. Bowen as a result of the formal complaint that he had filed against one of Dr. Bowen's colleagues. (Plaintiff's Exhibit 34.) Dr. Bowen denied making any threats or other racially charged statements, and the magistrate found that the issue resolved to one of witness credibility. It is well-settled that the trier of fact "'is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony.'" *Bey v. Bey*, Mercer App. No. 10-08-12, 2009-Ohio-300, ¶15, quoting *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159; *In re Jane Doe 1* (1991), 57 Ohio St.3d 135. It is

equally clear that the trier of fact "who hears a witness testify may believe any, any part or none of the testimony given." *Ross v. Biomet-Ross, Inc.* (Dec. 4, 1989), Logan App. No. 8-88-12, citing *Cleveland Heights v. Friedman* (Jan. 15, 1955)*, Cuyahoga App. No. 23406. The magistrate found that there was no evidence to substantiate that plaintiff's letter was ever received or reviewed by the office of affirmative action, or that Dr. Bowen made the alleged threatening remarks. Upon review of the transcript, the court finds that there is no testimony which would call Dr. Bowen's credibility into question. There is simply insufficient evidence to support a claim of ethnic discrimination or criminal misconduct. Accordingly, the court concludes that the magistrate properly determined the factual issues and appropriately applied the law with respect to plaintiff's claims brought pursuant to R.C. 2307.70(A) and 2927.12. Plaintiff's third objection is OVERRULED.

{¶ 22} Finally, plaintiff objects to the magistrate's recommendation that defendant's employees be entitled to civil immunity pursuant to R.C. 9.86 and R.C. 2743.02(F). Plaintiff alleges that Drs. Bowen, Tomeo, and Kaufman, and Maria Codinach, CSU's affirmative action officer, committed various criminal acts against him and that they acted knowingly and with malicious intent.

{¶ 23} "Under R.C. 9.86, an employee who acts in the performance of his duties is immune from liability. However, if the state employee acts manifestly outside the scope of his or her employment or acts with malicious purpose, in bad faith, or in a wanton or reckless manner, the employee will be liable in a court of general jurisdiction." *Thomson v. University of Cincinnati College of Medicine* (Oct. 17, 1996), Franklin App. No. 96 API-02260. In order to find malicious purpose, bad faith, or wanton or reckless conduct there must be a showing that the employee harbored a willful or intentional design to do injury; acted upon self-interest or sinister motive; and/or perversely disregarded a known risk. See, e.g., *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 453-454; *Lowry v. Ohio State Highway Patrol* (Feb. 27, 1997), Franklin App. No. 96API07-835; *Hackathorn v. Preisse* (1995), 104 Ohio App.3d 768, 771; *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 105, quoting Restatement of the Law 2d, Torts (1965) at 590, Section 500, Comment f. Plaintiff bears the burden of proving that a state employee should be stripped of immunity. *Fisher v. University of Cincinnati Med. Ctr.* (Aug. 25, 1998), Franklin App. No. 98AP-142.

{¶ 24} Upon review of the transcript, the court finds no evidence to support a

finding that any of the named employees harbored willful, intentional, sinister, or perverse motives or dispositions toward plaintiff. The court concludes that the magistrate properly determined the factual issues and appropriately applied the law with respect to his recommendation that Maria Codinach and Drs. Bowen, Kaufman, Tumeo, Alexander, and Rosentraub be entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.83. Plaintiff's final objection is OVERRULED.

{¶ 25} Having overruled each of plaintiff's objections, the court shall adopt the magistrate's decision and recommendation as its own, including findings of fact and conclusions of law contained therein. Judgment shall be rendered in favor of defendant. Maria Codinach and Drs. Bowen, Kaufman, Tumeo, Alexander, and Rosentraub shall be found to be entitled to civil immunity.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JOSEPH LEWIS

    Plaintiff

    v.

CLEVELAND STATE UNIVERSITY

    Defendant
    Case No. 2006-07457

Judge Joseph T. Clark
Magistrate Lewis F. Pettigrew

<u>JUDGMENT ENTRY</u>

For the reasons set forth in the decision filed concurrently herewith, and having overruled each of plaintiff's objections, the court adopts the magistrate's decision and

recommendation as its own, including findings of fact and conclusions of law contained therein. Judgment is rendered in favor of defendant. Further, the court finds that Maria Codinach and Drs. William Bowen, Sanda Kaufman, Jennifer Alexander, Mark Tumeo, and Mark Rosentraub are entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against them based upon the allegations in this case. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Christopher P. Conomy                    Joseph Lewis
Daniel R. Forsythe                       P.O. Box 5342
Assistant Attorneys General              Cleveland, Ohio 44105
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

LH/KAH/cmd/Filed May 26, 2010/To S.C. reporter June 9, 2010