[Cite as *Kinkade v. Noblet*, 2014-Ohio-3172.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| FRANCES J. KINKADE | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| HAROLD GEORGE NOBLET, ET AL. | : | Case No. 14CA4 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 2012 CV 496

JUDGMENT:                         Affirmed

DATE OF JUDGMENT:                 July 17, 2014

APPEARANCES:

For Plaintiff-Appellant

JOHN TARKOWSKY
GREGORY J. TARKOWSKY
3 North Main Street
Suite 500
Mansfield, OH  44902

For Defendants-Appellees

KENNETH R. BEDDOW
24 West Third Street
Suite 204
Mansfield, OH  44902

MICHAEL R. HENRY
MATTHEW R. PLANEY
500 South Front Street
Suite 1200
Columbus, OH  43215

*Farmer, J.*

{¶1}  On October 25, 2011, appellant, Frances Kinkade, was a participant in a Halloween parade in the city of Mansfield.  She walked alongside a parade float for appellee, All Care Services, LLC, passing out candy to spectators.  When she was out of candy, she would approach the float when it was stopped and retrieve additional candy from workers sitting on the float.  During one of those times, the float started to move before she walked away and she was injured when the wheels of the float ran over her foot/ankle.  The float was a decorated wooden trailer pulled by a pick-up truck being driven by appellee, Harold George Noblet.

{¶2}  On April 26, 2012, appellant filed a complaint against appellees, claiming negligence, recklessness, and/or willful disregard.  Appellees filed motions for summary judgment on July 25, 2013.  By order and judgment entry filed December 27, 2013, the trial court granted the motion, finding the doctrines of primary assumption of the risk and open and obvious applied, and there was no evidence that appellee Noblet was reckless or willful.

{¶3}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶4}  "THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT PLAINTIFF'S CLAIM IS BARRED BY THE ASSUMPTION OF RISK DOCTRINE."

II

{¶5}   "THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT PLAINTIFF'S CLAIM IS BARRED BY THE OPEN AND OBVIOUS DOCTRINE."

III

{¶6}   "THE TRIAL COURT ERRED IN HOLDING THAT THERE WAS NO EVIDENCE IN THE RECORD THAT DEFENDANT HAROLD GEORGE NOBLET ACTED RECKLESSLY."

{¶7}   Appellant challenges the trial court's granting of summary judgment in favor of appellees under two alternative doctrines, primary assumption of the risk and open and obvious.

{¶8}   Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:


Civ.R. 56(C)  provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511,

628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶9}   As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court.  *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35 (1987).  We will utilize this standard in reviewing the assignments of error.

I

{¶10}  Appellant claims the trial court erred in finding her claims were barred by the primary assumption of the risk doctrine.  We disagree.

{¶11}  In *Gallagher v. Cleveland Browns Football Co.,* 74 Ohio St.3d 427, 431-432, 1996-Ohio-320, Justice Resnick set forth a clear distinction between primary assumption of the risk and implied assumption of the risk:

Although the *Anderson* [*v. Ceccardi,* 6 Ohio St.3d 110 (1983)] court merged implied assumption of risk with contributory negligence, the court found that two other types of assumption of risk did *not* merge with contributory negligence - express (*e.g.,* contractual) assumption of risk and primary ("no duty") assumption of risk.  *Anderson's* statement that primary assumption of risk does not merge with contributory negligence is of critical importance to our discussion here because when a plaintiff is found to have made a primary assumption of risk in a particular situation, that plaintiff is totally barred from recovery, as a matter of law, just as he

or she would have been before *Anderson.* The net result of *Anderson's* differentiation between primary and implied assumption of risk is that now it is of utmost importance which type of assumption of the risk is put forth as a defense. In fact, after *Anderson,* these two defenses are so distinct that it is misleading that each continues to bear the title "assumption of risk," as if the two were interrelated concepts. Due to the confusion occasioned by continuing usage of "assumption of risk," many commentators have advocated abolishment of the term. "[T]he concept of assuming the risk is purely duplicative of other more widely understood concepts, such as scope of duty or contributory negligence. * * * It adds nothing to modern law except confusion." 4 Harper, James & Gray, Law of Torts (2 Ed.1986) 259, Section 21.8. However, despite this confusion, Ohio continues to recognize the term and its accompanying variations.

Primary assumption of risk is a defense of extraordinary strength. Based on the distinction drawn in *Anderson* between implied assumption of risk and primary assumption of risk, and the doctrine that a plaintiff who primarily assumes the risk of a particular action is barred from recovery as a matter of law, it becomes readily apparent that primary assumption of risk differs conceptually from the affirmative defenses that are typically interposed in a negligence case. An affirmative defense in a negligence case typically is the equivalent of asserting that even assuming that the plaintiff has made a prima facie case of negligence, the plaintiff cannot recover. A primary assumption of risk defense is different because a

defendant who asserts this defense asserts that no duty whatsoever is owed to the plaintiff.  See Prosser & Keeton, Law of Torts (5 Ed.1984) 496–497, Section 68 (Primary assumption of risk "is really a principle of no duty, or no negligence, and so denies the existence of any underlying cause of action.").  Because a successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law, the defense prevents the plaintiff from even making a prima facie case.

{¶12} In applying this definition, we are further guided by the Tenth District in *Crace v. Kent State University,* 185 Ohio App.3d 534, 2009-Ohio-6898, ¶ 15-17 (citations omitted):

As a result, primary assumption of the risk negates a negligence claim because no duty is owed to protect against the inherent risks of the recreational activity.  Given this profound impact, courts should proceed with caution when deciding to apply primary assumption of the risk.

Under primary assumption of the risk, the injured plaintiff's subjective consent to and appreciation for the inherent risks are immaterial to the analysis.  Indeed, "those entirely ignorant of the risks of a sport, still assume the risk * * * by participating in a sport or simply by attending the game.  The law simply deems certain risks as accepted by plaintiff

regardless of actual knowledge or consent." In accordance with these principles, our court has previously held:

[P]rimary assumption of [the] risk requires an examination of the activity itself and not plaintiff's conduct. If the activity is one that is inherently dangerous and from which the risks cannot be eliminated, then a finding of primary assumption of [the] risk is appropriate.

*Gehri v. Capital Racing Club, Inc.* (June 12, 1997), 10th Dist. No. 96APE10–1307, 1997 WL 324175.

On the other side, under the implied-assumption-of-the-risk defense, a court must engage in a comparative-fault analysis. To prevail on the defense of implied assumption of the risk, a defendant must demonstrate that the injured participant in fact "consented to or acquiesced in an appreciated or known risk."

{¶13} To date, Ohio courts have not addressed the issue of whether a "parade" qualifies under the primary assumption of the risk doctrine. Employing the analysis in *Gallagher* and *Crace,* we conclude, as did the trial court, that primary assumption of the risk applies sub judice.

{¶14} Under Civ.R. 56, the facts construed must favorably to the non-moving parties are as follows. Appellant was a volunteer and was given very limited instructions as to her activity. Kinkade depo. at 49-50, 59. She was told to pass out candy on the parade route by walking alongside the float. *Id.* at 50. She passed out the candy to spectators on the parade route. She was told to refill the candy pockets

on her apron by retrieving the candy from the float when it stopped. *Id.* at 50-51, 55. She was not told where to approach the float from. *Id.* at 51. She admitted to never knowing how long the float would be stopped, but knew to get away from it as quickly as possible. *Id.* at 52. The apron she wore and the instructions she received were from appellee All Care. *Id.* at 51, 59.

{¶15} These facts establish that appellant was a willing parade participant. *Id.* at 57. No other conclusion is possible. Appellant admitted it was her choice to pass out the candy, although her primary reason was to take her daughter to the parade to ride on the float. *Id.* at 57-58, 67.

{¶16} Prior to the accident, appellant stated she successfully refilled her candy apron two times. *Id.* at 51. On the third trip, she walked up to the stopped float in front of the trailer wheels as before, and retrieved candy from Marcie Crawford who was sitting on the float in front of the wheels. *Id.* at 53. The float started to move and Ms. Crawford's hand was still in the apron pouch placing the candy. *Id.* Appellant yelled "[w]ait, wait, wait" and attempted to get out of the way, but her foot got caught and she was struck and sustained injuries. *Id.* at 53, 61. She could not obtain candy from anyone behind the wheels as the persons dispensing the candy were sitting on the float in front of the wheels. *Id.* at 56-57. Appellant explained the float "pulled out so quickly" that she "could not have gotten out if I wanted to." *Id.* at 73.

{¶17} Ms. Crawford and another witness, Bethann Chapman, were seated on the float dispensing the candy. Although they differ as to appellant's position in escaping the moving float, they do add evidence as to the speed and description of the float. Crawford depo. at 19-24; Chapman depo. at 23, 25-27. A photograph attached

to various depositions depicts the trailer that made up the float, showing the wheels were outside the trailer bed and were clearly visible. Crawford depo. at 28-29. Both witnesses stated the parade pace was slow, slower than a walking pace. Crawford depo. at 19; Chapman depo. at 25, 38.

{¶18} We find the activity of walking along a moving float, distributing candy to spectators, and refilling one's supply of candy from a float that stops and starts throughout the parade, is an inherently dangerous activity from which risks cannot be eliminated. The specific dangerous activity was approaching the float near the exposed wheels that could start and stop as a result of parade traffic.

{¶19} Upon review, we find the trial court did not err in applying the primary assumption of the risk doctrine.

{¶20} Assignment of Error I is denied.

## II, III

{¶21} Appellant claims the trial court erred in finding, in the alternative, her claims were barred by the open and obvious doctrine, and erred in finding there was no evidence that appellee Noblet acted recklessly. We disagree.

{¶22} In *Armstrong v. Best Buy,* 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5, the Supreme Court of Ohio discussed the open and obvious doctrine as follows:

> The sole issue before this court concerns the viability of the open-and-obvious doctrine, which states that a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233

N.E.2d 589, paragraph one of the syllabus. The rationale underlying this doctrine is "that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504. A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474; *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 12 O.O.3d 321, 390 N.E.2d 810. When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims.

{¶23} As the *Armstrong* court noted at ¶ 13, "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff."

{¶24} The photograph of the trailer that made up the float speaks a thousand words. Not only were the wheels open and obvious, but appellant's two previous trips to the same area of exposure are sufficient to support the trial court's decision.

{¶25} In *O'Toole v. Denihan,* 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 73-75, (citations omitted), the Supreme Court of Ohio discussed "recklessness" as follows:

In *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, we held that an actor's conduct " 'is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' "  Id. at 104–105, 559 N.E.2d 705, quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.  Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk.***

Recklessness, therefore, necessarily requires something more than mere negligence.***In fact, "the actor must be conscious that his conduct will in all probability result in injury."

Although the determination of recklessness is typically within the province of the jury, the standard for showing recklessness is high, so summary judgment can be appropriate in those instances where the individual's conduct does not demonstrate a disposition to perversity.

{¶26}  Appellant argues appellee Noblet was aware people were approaching the float, yet he did not look in his side mirrors before moving.  Noblet depo. at 57-58, 62-

63.  Appellee Noblet stated he could not "see a whole lot behind."  *Id.* at 57.  His main concern was with the people in front of him.  *Id.*

{¶27}  As determined by the trial court, we concur there is no evidence that appellee Noblet's conduct rose to the level of recklessness as that term is explained above.

{¶28}  Assignments of Error II and III are denied.

{¶29}  The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Baldwin, J. concur.

SGF/sg